HOLLIS CUMMINGS *et al.*

*v.*

ALLEN B. BURLESON *et al.*

1. HOMESTEAD—*how set off on decree of foreclosure of mortgage.* The statute not having, in terms, pointed out the particular manner in which a court of chancery shall proceed to set off a homestead, where it becomes necessary to enforce a lien in equity on the premises, it is proper to adopt the mode provided by the statute when an officer holds an execution.

2. It is proper in a decree of sale upon foreclosure of a mortgage, to direct the master in chancery "to proceed, according to law, to summon three householders, as commissioners, who shall, upon oath, administered to them by such master, appraise the value of the premises in which homestead is claimed, and if the premises can, in their opinion, be divided without injury to the interests of the parties, to set off so much thereof,

282        CUMMINGS *et al. v.* BURLESON *et al.*        [Sept. T.

Opinion of the Court.

including the dwelling house, as shall be worth $1000, and that the master sell the residue of said premises."

3. In summoning such commissioners, the master acts as an officer of the court, for and on behalf of all the parties to the proceeding, and need not consult the owner of the premises in selecting such commissioners.

4. INJUNCTION — *assessment of damages on dissolution.* Where the sale of premises by a master in chancery was enjoined, it was proper, in assessing damages on the dissolution of the injunction, to include the costs of advertising the sale, and a reasonable solicitor's fee for defending the injunction suit.

WRIT OF ERROR to the Circuit Court of Carroll county; the Hon. W. W. HEATON, Judge, presiding.

Messrs. ARMOUR & SHAW, for the plaintiffs in error.

Mr. C. B. SMITH, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought to enjoin the sale of certain premises under a decree, on the ground that the land decreed to be sold was the homestead of the complainant, and that the homestead had not been set off in the mode required by law.

To the bill a demurrer was filed, which the court sustained, dissolved the injunction, dismissed the bill, and assessed damages, in the sum of $34.60, against the complainant, for a wrongful suing out of the injunction.

It appears, from the allegations of the bill, that, at the April term, 1874, of the circuit court of Carroll county, Allen B. Burleson obtained a decree against Hollis Cummings and others, foreclosing a certain mortgage, which had been given by Cummings to the Racine and Mississippi Railroad Co., to secure a debt due and owing from the said Cummings. The mortgaged premises were occupied by Cummings as a homestead.

The decree of foreclosure, among other things, contains the following provision:

"That in default of the payment of said sum of $2297.77, interest and costs, by the said Hollis Cummings to the said complainant, as aforesaid, the master in chancery of this court shall proceed, according to law, to summon three household-ers, as commissioners, who shall, upon oath, to be adminis-tered to them by the said master, appraise the value of said premises, exclusive of said one-tenth of an acre occupied by said Western Union Railroad Company; and if, in the opin-ion of said commissioners, said premises may be divided with-out injury to the interests of the parties, they shall set off so much of said premises, including the dwelling house, as, in their opinion, shall be worth $1000, and the residue of said premises shall be advertised and sold by said master, in the manner hereinafter provided."

Under and by virtue of the decree, the master in chancery summoned three men, to act as commissioners, to appraise the premises, and to set off to Cummings a homestead.

These commissioners, after having been sworn as required by law, went upon the premises and appraised the same, and set off to Cummings a certain portion thereof, including the dwelling house, as a homestead.

It is not claimed that the commissioners selected by the master in chancery were incompetent men, or that they acted partially or corruptly, but the theory of the complainant, as we understand it, is, that he had the right to participate in the selection of the commissioners, and that he should have been notified of the meeting of the commissioners, and that it was his right to appear before them, and introduce evi-dence in regard to the value of the premises out of which a homestead was to be assigned.

It will be observed that the statute does not, in terms, pro-vide the particular manner in which a court of chancery shall proceed to set off a homestead, where it becomes necessary to enforce a lien in equity upon the premises.

Section 8, Revised Laws of 1874, page 498, declares : "In the enforcement of a lien in a court of equity upon premises,

including the homestead, if such right is not waived or released, as provided in this act, the court may set off the homestead and decree the sale of the balance of the premises."

Where a judgment has been rendered in an action at law, and the sheriff holds an execution, and the premises sought to be sold are claimed as a homestead, the mode of proceeding is clearly pointed out by section 10, page 498, of the statute, in the following words :

"If, in the opinion of the creditors or officer holding an execution against such householder, the premises claimed by him or her as exempt are worth more than $1000, such officer shall summon three householders, as commissioners, who shall, upon oath, to be administered to them by the officer, appraise said premises ; and if, in their opinion, the property may be divided without injury to the interest of the parties, they shall set off so much of said premises, including the dwelling house, as, in their opinion, shall be worth $1000, and the residue of said premises may be advertised and sold by such officer."

The court, by its decree, adopted the mode provided by the section of the statute last cited, where an officer holds an execution, and in this we perceive no error.

It is but fair to presume, that, where the legislature directed a particular mode of procedure where an execution was held by a sheriff, and, in certain cases, empowered a court of equity to set off a homestead, the act being silent as to the manner of proceeding by the court, it was the intent that the same course should be pursued, so far as was practicable, by the court, through its master in chancery, as was required by the sheriff under section 10 of the act.

The result to be obtained under either section of the statute is the same—the rights to be guarded and responsibilities incurred are as great under one section as the other. Under section 10 the sheriff proceeds as a sworn officer of the court; under section 8 the master in chancery, who is likewise an officer of the court, acts under the sanction of his official oath.

We are satisfied the mode adopted by the court was in harmony with the statute, and one, too, not calculated in the least to abridge any of the legal or equitable rights of the complainant.

Should the commissioners selected by the master in chancery disregard their oaths, and, in the discharge of their duties, act corruptly or partially, the complainant would have had a complete and ample remedy, by application to the court, by motion to set aside their report.

Under the mode of procedure, therefore, adopted by the court, the rights of the complainant were in no manner infringed upon.

There is no force in the position of the complainant that he had no voice in the selection of the commissioners who set off the homestead. The statute did not require the master to consult him in selecting the commissioners.

The complainant in the original decree had no voice in their selection. The master in chancery, an officer of the court, whose every act was subject to the approval or rejection of the court, acted as a disinterested officer for and on behalf of each of the parties in interest. It was his duty to select as commissioners men of integrity and good judgment. This, so far as appears, he did, and, so far as we are able to perceive from the allegations of complainant's bill, he has no just ground of complaint.

In regard to the damages assessed by the court against the complainant on the dissolution of the injunction, in that we see no error. It was shown that $25 was a reasonable solicitor's fee for defending against the bill, and the advertising of the premises for sale had cost $9.60. The amount allowed was made up of these two items, and properly so.

The decree of the circuit court will be affirmed.

*Decree affirmed.*