ANDREW DILLMAN

*v.*

THE WILL COUNTY NATIONAL BANK *et al.*

*Filed at Ottawa October 31, 1891.*

1. HOMESTEAD—*commissioners to set off—administering oath.* A court of equity has the power to direct that commissioners appointed under the provisions of a decree of foreclosure to appraise real estate and set off homestead therein, may take the oath for the performance of their duties before any officer empowered by law to administer oaths generally.

2. SAME—*commissioners to appraise and set off—report, by whom made.* Where commissioners selected to appraise the property and set off the homestead find the value of the property, and that it can not be divided without injury to the interests of the parties, and sign and swear to a written report embodying such conclusion, such report, in legal contemplation, will become their report, notwithstanding the fact that the labor of writing it and putting it in form may have been done by some other person.

3. The practice of making out the commissioners' report by a solicitor of one of the parties is not one to be commended, and when this is done, the court, in case of slight injury, may come to the relief of the party damnified, but in the absence of any fraud or injury to either party such report will not be set aside.

4. SAME—*commissioners to set off—selecting and summoning.* Where the master in chancery dates and signs the summons for the commissioners, whose names are inserted in it, and who are agreed upon by all the parties interested, it will be presumed that he knew what he was doing, and that he thereby selected the persons named in the summons, and that he, by signing the papers, adopted them as his own act, though they were written by an attorney of one of the parties.

5. In summoning commissioners to set off a homestead the master in chancery acts as an officer of the court and for and on behalf of each and all of the parties in interest, and it is his duty to select men of integrity and good judgment, and neither of the parties can demand the right to participate in their selection.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

Mr. GEORGE S. HOUSE, for the appellant.

Messrs. HILL & HAVEN, and Messrs. HALEY & O'DONNELL, for the appellees.

Mr. JUSTICE BAKER delivered the opinion of the Court:

In a suit in equity to foreclose a trust deed, prosecuted by the Will County National Bank, the decree was that Andrew Dillman was indebted to the bank in the sum of $15,324.16, and to John W. Nadelhoffer in the sum of $8647.89; that $9493.87 of the amount due the bank was a first and prior lien upon the real estate involved in the suit, the debt of Nadelhoffer a second lien thereon, and the residue of the claim of the bank, being $5158.20, a third lien. It was also decreed that Dillman had an estate of homestead in the real estate as against both the bank and Nadelhoffer. It was ordered that in default of payment of said sums of money within the time limited by the decree, "the master in chancery shall proceed according to law to summons three householders as commissioners, who shall, upon oath to be administered to them by the said master, or by any officer authorized by law to administer oaths, appraise the value of said premises; and if, in the opinion of said commissioners, said premises may be divided without injury to the interests of the parties, so as to set off a homestead, including the dwelling house on said premises, of the value of $1000, they shall so set off such homestead out of said premises, and the residue of said premises shall be advertised and sold by the master in the manner hereinafter provided, and if, in the opinion of the commissioners, such homestead can not be specifically set off from said premises without injury to the parties interested, then that the said master shall advertise and sell all of said premises, or so much thereof as may be sufficient to realize the amount so due the complainant and said John W. Nadelhoffer, principal and interest." Subsequently commissioners were

appointed, and they reported to the master that the premises could not be divided without injury to the interests of the parties owning the same, and they appraised the value of the property at $13,000. Thereafter, the master made sale of the premises for $17,000, and issued a certificate of the sale to the purchaser, and made report of such sale to the court, which was duly approved. The master retained $1000 of the proceeds of the sale for Dillman, and distributed the residue in accordance with the provisions of the decree. Dillman, at a subsequent term of the court, made a motion to vacate and set aside the sale. The grounds of his motion were, that his homestead was not legally assigned on the property, not legally appraised, and that the premises were sold without a due appraisement thereof. The circuit court entered an order denying the motion, and on appeal to the Appellate Court that order was affirmed. This further appeal brings the controversy here.

The grounds of supposed error seem to be: First, that the commissioners selected to appraise the premises and set off homestead were not sworn by the master in chancery, but by a notary public; second, that Egbert Phelps, solicitor for the bank, instead of the master, selected the commissioners; third, that the summons to the commissioners, with the exception of the date and the signature of the master, the acknowledgment of service thereon, with the exception of the signatures of the commissioners, the oath of the commissioners, with the exception of the signatures of the commissioners thereto, the report of the commissioners, with the exception of the signatures thereto, and the notice to Dillman of the appraisement, with the exception of the signature of the master thereto, are all in the handwriting of the solicitor of the bank. We will consider these matters in their order.

*First*—The decree of the court expressly provided that the oath of the commissioners might "be administered to them by the said master, or by any officer authorized by law to administer oaths." In *Dillman et ux.* v. *Will County National Bank,*

138 Ill. 282, in which the decree by virtue of which the sale now before us was made was under consideration, we held that a court of equity has power to direct that commissioners appointed under the provisions of a decree to appraise real estate and set off homestead may take the oath for the performance of their duties before any officer empowered by law to administer oaths generally, and that notaries public are thus empowered. We adhere to the decision there made on this point.

*Second*—The evidence does not support the claim that Phelps, the solicitor of the bank, selected the commissioners. The uncontradicted evidence is, that the attorneys for the several parties to the suit, including House, the solicitor for Dillman, agreed upon the commissioners, and that one or two who were suggested by Phelps were not selected. By the terms of the decree the master in chancery was ordered to "proceed according to law to summons three householders as commissioners." In summoning the commissioners the master was acting as an officer of the court, and for and on behalf of each and all of the parties in interest, and it was his duty to select as commissioners men of integrity and good judgment. (*Cummings et al.* v. *Burleson et al.* 78 Ill. 281.) Neither the party complainant nor the party defendant could properly demand the right to participate in the selection of the commissioners. (Idem.) That the master should select as commissioners men suggested by one or some, only, of the parties to the decree, might be seriously objectionable. But that is not this case. Here, the parties to the decree, including appellant, agreed upon the commissioners, and there is no claim that such commissioners were not honest, competent and impartial men. When the master dated and signed the summons with their names inserted in it, it will be presumed that he knew what he was doing, and it must be regarded that by his act, he, to all legal intents and purposes, selected and designated as commissioners the persons named in said summons.

*Third*—It is conceded that Phelps wrote the summons, the report of the commissioners, and the other papers relating to the assignment of homestead and appraisement of the premises, except the signatures and one or more of the dates. It is admitted, however, that both morally and professionally he is a man of excellent character, and that there was not, in anything that he did, the slightest intent to abridge the appellant of a single right. The two points that were to be determined by the commissioners were, the value of the property, and whether or not it was capable of subdivision. It is manifest that Phelps did nothing to influence the judgments of the commissioners in respect to either of these matters. It is also certain that appellant was not prejudiced, in any manner, by the conclusions reached by the commissioners. It is an admitted fact that the real estate was not susceptible of division. It is conceded that it was worth more than $1000, and less than the liens decreed against it. It was, then, to the interest of the creditors that the property should be appraised at the highest possible valuation, and for the interest of appellant that it should be appraised at the lowest possible valuation. The smaller the valuation fixed, the less the sum appellant would be required to pay in order to retain his property. The commissioners appraised the value of the premises at $13,000, and within ninety days thereafter they were sold at the master's sale for $17,000. This indicates that the appraisement was not too high. When the master in chancery put his signature to the summons and other papers signed by him, he adopted them as his own acts. When the commissioners reached the conclusion that the premises were of the value of $13,000, and that they could not be divided without injury to the interests of the parties interested, and signed and swore to a written report embodying such conclusions, said report became, in legal contemplation, their report, notwithstanding the fact that the labor of writing it and putting it in form had been done by some other person. It may be that the fact that

the scrivener in this particular case was a solicitor for one of the parties in interest is indicative of a practice that is liable to abuse and not to be commended, and that the courts would, in case of even slight injury, come to the relief of the party damnified. It is plain, however, from this record, that here there not only was no fraud on the part of either the master, the commissioners, or the solicitor who drafted the report and other papers, but that nothing was done by either which resulted in an injury to the rights of appellant.

We find no substantial error in the record. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*