# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE INTER-STATE BUILDING AND LOAN ASSOCIATION

*v.*

EMMA I. AYERS *et al.*

*Opinion filed December 21, 1898.*

177    9
88a 622

177    9
100a ¹249

1. MORTGAGES—*priority does not depend solely upon dates of execution and recording.* Priority among mortgagees does not depend solely upon the dates of the execution and recording of the mortgages, but also upon the knowledge which they have of the true state of the title, and of the rights of third parties whose evidence of title has not been recorded.

2. LOAN ASSOCIATIONS—*secretary of advisory board is the agent of the association.* The secretary of a local advisory board of a loan association, whose duties are to solicit stock, make loans, collect dues and interest, do general work of secretary and treasurer, keep the local accounts, collect dues, fees and premiums from local stockholders, transmit applications for loans, receive the draft for the loan and hold the proceeds subject to orders of the borrower, is the agent of the association with respect to such matters.

3. SAME—*notice to secretary of advisory board of a prior mortgage is notice to the association.* Notice to the secretary of a local advisory board, of an unrecorded mortgage upon property upon which he is negotiating a loan from the association, is notice to the association, notwithstanding the abstract, which does not show the mortgage is examined by the association's attorney at its home office.

4. SAME—*priority of the association's mortgage is affected by its agent's knowledge.* A mortgage executed prior to one of a loan association on the same land is entitled to priority, though the association's mortgage is recorded first, where the delay in recording the former is brought about, without the knowledge of the mortgagee, by collusion between the agent of the association who was negotiating the loan and the party entrusted with the recording.

5. SAME—*secretary's act in paying out loan does not make him the borrower's agent.* The act of the secretary of a local advisory board in holding the proceeds of the loan and paying out the same to material-men and laborers upon the borrower's order does not make him the latter's agent, as such course is necessary to the proper protection of the association.

6. PLEADING—*matters of evidence need not be pleaded.* One answering a bill for a mechanic's lien and filing a cross-bill for foreclosure of his mortgage, alleging the same to be a lien on the land prior to all others, need not allege notice by other lienholders to render proof of the same admissible to sustain his allegations of priority.

7. SAME—*defendant who has answered may file cross-bill of right, after reference.* A defendant who has answered may file his cross-bill without leave of the court, although a reference to the master has been made.

8. MECHANICS' LIENS—*when contract for deed will support lien upon title acquired.* A mechanic's lien for materials contracted to be furnished to one who has a contract with the owner of land for a warranty deed will attach to the entire title acquired during the progress of the building, in pursuance of the contract for the deed.

9. SAME—*contract with authorized agent is binding upon principal when disclosed.* A contract for furnishing material, made with the authorized agent of the owner of the land, is binding upon the latter and will support a mechanic's lien, though the principal is not disclosed until the work has been partly performed, at which time such part performance is ratified and the contract afterward completed with full knowledge of the facts.

10. SAME—*what will not invalidate statement of lien.* Errors in respect to matters not required to be included in the statement of a mechanic's lien filed with the circuit clerk will not invalidate the statement or defeat the lien.

11. SAME—*when mortgage cannot operate until mechanic's lien is satisfied.* A mechanic's lien for material attaches to the land at the making of the contract and to the building as it progresses, and, under section 17 of the Mechanic's Lien act of 1893, must be satisfied before a subsequent mortgage can operate upon the building or the materials; nor can the mortgage be given priority over the lien, to any extent, in the absence of proof of the value of the land without the improvements, or of other facts authorizing priority.

12. PRACTICE—*when answer may be referred to though original bill is dismissed.* A reference by a defendant in mechanic's lien proceedings in his answers to the several cross-bills, to the answer filed by him to the original bill in which he sets up the facts upon which he bases his claim for a prior mechanic's lien, will authorize resort to such answer on appeal, for the purpose of supporting his lien, although the original bill is dismissed by the final decree.

*Inter-State Building Ass. v. Ayers,* 71 Ill. App. 529, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on writ of error to the City Court of Aurora; the Hon. RUSSELL P. GOODWIN, Judge, presiding.

ALSCHULER & MURPHY, (J. J. MORRISSEY, of counsel,) for appellant:

To take a case out of the registry acts, so as to defeat the title of a subsequent purchaser who first places his deed upon record, on the ground that he had actual notice of a prior unrecorded deed of the same premises, the proof of such notice should be clear and positive, so as to leave no reasonable doubt that the taking of the second conveyance was, under the circumstances, an act of bad faith toward the first purchaser.    *Pittman* v. *Sofley,* 64 Ill. 155; *Rogers* v. *Wiley,* 14 id. 65; *Robertson* v. *Wheeler,* 162 id. 566.

The parties may, as between themselves, make a valid agreement, though verbal only, that one of two mortgages shall have priority.    Jones on Real Prop. sec. 1588.

Notice to an agent, to bind principal, must be within scope of the agent's employment.    Jones on Real Prop. sec. 1536; 1 Am. & Eng. Ency. of Law, (2d ed.) 1447.

Notice to individual directors is not notice to the corporation.    *Innerarity* v. *Bank,* 139 Mass. 332; Mechem on Agency, sec. 730, and authorities cited.

Notice by the secretary and treasurer of a loan association is not imputable to the association as notice, where he had no power to make loans or accept propositions for borrowing, such power being lodged in directors or other superior officers.    *Freeman* v. *Building Ass.* 90 Ga. 190.

Notice, to affect a corporation, must be brought home to the president or directors, or some other officer to whom the matter to which the notice relates had been specially given in charge. Jones on Real Prop. sec. 1543.

Where an agent representing two principals concocts a scheme to defraud one of them for the benefit of the other, it will be presumed that he did not disclose to the principal that he intended to cheat, or the means by which he intended to effect his purpose. *DeKay* v. *Water Co.* 38 N. J. Eq. 158; *Innerarity* v. *Bank,* 139 Mass. 332; *Dillaway* v. *Butler,* 135 id. 479; *Frankel* v. *Hudson,* 82 Ala. 162; *Insurance Co.* v. *Michigan,* 53 N. Y. 144; *Wickersham* v. *Zinc Co.* 18 Kan. 461; *Barnes* v. *Gas Light Co.* 27 N. J. Eq. 33.

Where one of two innocent parties must suffer from the fraud of a third, it must be the one who has placed it in the power of such third person to commit the fraud. *Smith* v. *Supervisors,* 59 Ill. 412; *Railroad Co.* v. *Phillips,* 66 id. 190; *Yocum* v. *Smith,* 63 id. 321; *Marshall* v. *Ender,* 20 Ill. App. 312; 125 Ill. 370.

The lien provided for in sections 1 and 29 of the Mechanic's Lien act of 1893 extends to an estate in fee, for life, for years, or any other estate, or any other interest which the owner may have in the lot or land at the time of the making of the contract. Rev. Stat. chap. 82, sec. 2.

Where the contracting party has no such interest there can be no lien. *Wendt* v. *Martin,* 89 Ill. 139; *Campbell* v. *Jacobson,* 145 id. 389.

The mere fact that the wife knew the improvements were being made on her land, and saw them occasionally, and executed a mortgage on the same to partly pay for them, is not sufficient to sustain a lien on the property if the contract was actually made with the husband. *Campbell* v. *Jacobson,* 145 Ill. 389; *Geary* v. *Hennessy,* 9 Ill. App. 17.

Where the interests of a purchaser are to be affected a stricter construction of the Lien law will be adhered to than is followed in cases arising between material-men and the original owner. *Springer* v. *Kroeschell,* 161 Ill. 358.

ALDRICH, WINSLOW & WORCESTER, for appellees:

A vendee in possession of a lot under a contract of purchase has such an interest therein as will support the lien of a mechanic for work done and materials furnished prior to the forfeiture of the contract. *Henderson* v. *Connelly*, 23 Ill. App. 601; 123 Ill. 98.

The word "owner" in the statute includes the owner in equity as well as at law. It covers one who has the equitable title. Phillips on Mechanics' Liens, secs. 67, 188; *Atkins* v. *Little*, 17 Minn. 342; *Rollin* v. *Cross*, 45 N. Y. 766; *Mortgage Trust Co.* v. *Sutton*, 46 Kan. 166; *Drug Co.* v. *Brown*, id. 543; *Springer* v. *Kroeschell*, 161 Ill. 358.

Where the owner of property allows another to appear as the owner thereof, and innocent persons are thus led into dealing with such apparent owner, they will be protected. By such act the real owner is precluded from disputing, as against them, the existence of the title which he has suffered to be vested in the party dealing with them. *Springer* v. *Kroeschell*, 161 Ill. 358; *Anderson* v. *Armstead*, 69 id. 452.

The principal may, when discovered, be held responsible, although concealed by the agent and the agent alone trusted. The agency and defendant's liability must depend upon the fact, rather than upon plaintiff's knowledge of the fact. *Doane* v. *Duncan*, 17 Ill. 275; Story on Agency, secs. 291-446; *Dykers* v. *Thompson*, 24 N. Y. 57; *Wiener* v. *Whipple*, 53 Wis. 298; *Meeker* v. *Claghorn*, 45 N. Y. 349; *Jessup* v. *Stephenson*, 75 id. 613; *Hill* v. *Miller*, 76 id. 32; *Beyner* v. *Bousell*, 79 Pa. 298; Benjamin on Sales, sec. 219, note 21, and cases cited; *Malcolm* v. *Lyon*, 19 N. Y. Supp. 210; *Boland* v. *Fuel Co.* 34 Fed. Rep. 523; *Ford* v. *Williams*, 21 How. 287; *Polk* v. *Meadow Spring D. Co.* 20 Fed. Rep. 37.

A party cannot make a valid election between agent and principal until he shall know the name of the principal in addition to the fact of agency. 1 Am. & Eng. Ency. of Law, (2d ed.) 1139, 1140, and cases cited; *Schendel* v. *Stevenson*, 153 Mass. 351.

Although the Lien law, being in derogation of common right, is to be strictly construed, yet the purpose of the law is to promote and preserve industrial interests, and the construction should be reasonable, and not such as renders it inoperative. *Stout* v. *Sower*, 22 Ill. App. 65; *Paddock* v. *Stout*, 121 Ill. 571; *Hayes* v. *Hammond*, 162 id. 137.

A mechanic's lien is superior to that of a prior trust deed unrecorded at the date of the mechanic's contract, and inferior to a prior recorded trust deed. *Thielman* v. *Carr*, 75 Ill. 385.

A. M. BEAUPRE, and M. O. SOUTHWORTH, also for appellees:

Notice to the agent of a purchaser of land, of the equitable rights of a third person in the same, the agent having been employed in respect to and participating in the transaction, is notice to the purchaser. *Doyle* v. *Teas*, 4 Scam. 202; *Jackson* v. *Horton*, 126 Ill. 567; *Rector* v. *Rector*, 3 Gilm. 105.

Where an agent comes to the knowledge of a fact while he is concerned for the principal, this operates as constructive notice to the principal himself. *Fitzherbert* v. *Mather*, 1 T. R. 12; *Ingalls* v. *Morgan*, 10 N. Y. 185; *Norris* v. *DeNeve*, 3 Atk. 26; *Jennings* v. *Moore*, 2 Vern. 608; *Downes* v. *Power*, 2 B. & B. 491; *Jeffrey* v. *Bigelow*, 13 Wend. 578; *Brotherton* v. *Hall*, 2 Vern. 574.

The rule holding the principal liable for notice given to an agent applies to agents of corporations as well as to those of other principals. *Bank* v. *Irons*, 8 Fed. Rep. 1; *Bank* v. *Payne*, 25 Conn. 449; *Insurance Co.* v. *Dry Dock Co.* 31 La. Ann. 149; *Bank* v. *Cushman*, 121 Mass. 490; *Cragie* v. *Hadley*, 99 N. Y. 131; *Wilson* v. *McCullough*, 23 Pa. St. 440; *Hart* v. *Bank*, 33 Vt. 252; *Nashville* v. *Elliott*, 1 Coldw. 619; *Hayward* v. *Insurance Co.* 52 Mo. 191; *Mihills Manf. Co.* v. *Camp*, 48 Wis. 130; Jones on Real Prop. sec. 1543.

Where the business of a company is such as to require it to be conducted through agents, notice to one in a

matter in which he acted within the scope of his employment and in the usual course of the company's business will bind the company. *Railroad Co.* v. *LeNevine*, 2 La. Ann. 129.

A purchase money mortgage given by the purchaser of land to the vendor to secure a balance of unpaid purchase money has priority over every claim or lien of any kind arising through the mortgage, to the extent of the land purchased. 1 Jones on Mortgages, (4th ed.) sec. 464; Boone on Mortgages, sec. 74; 19 Am. & Eng. Ency. of Law, 575, and cases cited; *Curtis* v. *Root*, 20 Ill. 518; *Elder* v. *Derby*, 98 id. 228; *Roane* v. *Baker*, 120 id. 308.

Per CURIAM: The opinion of the Appellate Court in this case was delivered by Mr. Justice DIBELL, and is, in part, as follows:

"This cause originated in a bill for a mechanic's lien upon lot 3 of Burdsall & Bruce's addition to Aurora, filed by C. Solfisburg, against Emma I. Ayers, the owner thereof, and others, for materials used in erecting a building for 'flats' on said lot. Many mechanics and material-men filed answers claiming liens. Plaintiff in error answered, claiming a mortgage lien for the principal sum of $6000, with interest and other charges superior to all other liens, and filed a cross-bill for the foreclosure of said mortgage. Henry Hafenrichter answered, claiming a mortgage lien for the principal sum of $1850, with interest, prior to all other liens, and filed a cross-bill for the foreclosure of said mortgage. Issues were joined, and there was reference to the master to take proofs and state an account between the parties. The master heard proofs and prepared a report, to which numerous objections were filed and by the master overruled. Exceptions were filed to the master's rulings, and there was a hearing thereon in the circuit court, where two exceptions were sustained and all others were overruled, and there was a decree accordingly. By said decree Hafenrichter was given a

first lien under his mortgage; Laurens Hull, trading as the Aurora Lumber Company, was given a second lien for materials furnished; plaintiff in error was given a third lien under its mortgage; numerous other mechanics and material-men were given a fourth lien *pro rata*, and certain others who had asserted liens, including C. Solfisburg, were denied a lien. The association brings the cause here by writ of error, and has assigned errors upon the record.

"No cross-errors have been assigned. The rights of those who received a lien fourth in order and of those who were denied a lien are not involved. Mrs. Ayers does not question the order of the liens established by the decree. There is also no controversy between Hafenrichter and Hull. The questions are whether Hafenrichter was entitled to priority over plaintiff in error, and whether Hull was entitled to any lien, and if so, whether he was entitled to priority over plaintiff in error.

"Mrs. Ayers is the daughter of Hafenrichter, and the wife of Francis E. Ayers. J. H. Jenks, at the time of the events here litigated, was the secretary of the advisory board of plaintiff in error at Aurora. Hafenrichter received a deed of the property September 2, 1892, and afterwards made some arrangement for selling it to his daughter, and she went into possession, and her husband made contracts with mechanics and material-men for the erection of this building. After the work on the building had progressed some considerable time, Hafenrichter on May 20, 1893, conveyed the lot to Mrs. Ayers for the consideration of $2200, and she paid him $350 in cash, and executed, with her husband, a note of that date for $1850, due in six months after date, with interest at six per cent per annum for the balance of the purchase money, and also a mortgage upon the lot securing said note. Hafenrichter handed the mortgage to Ayers that day, with directions to get it recorded, and supposed, till long after, that it had been so recorded. As the result of a confer-

ence between Ayers and Jenks, Ayers kept the Hafenrichter mortgage off the record till Mrs. Ayers' application for a loan from plaintiff in error had been granted, the money paid and the mortgage to the association recorded. Jenks placed the association's mortgage on record July 8, 1893, and Ayers placed the Hafenrichter mortgage on record July 11, 1893.· Thus the mortgage first executed was last recorded.     *   *   *

"When Hafenrichter's mortgage was placed in the hands of Ayers to file it for record he immediately consulted Jenks, and, by the suggestion and procurement of the latter, Ayers withheld it from record till after plaintiff in error's mortgage was at a later date executed, sent to Bloomington, accepted, returned from Bloomington with the money, and recorded.   Plaintiff in error, in its opening brief, admits the acts of Jenks in this matter in the following language:  'There can be no question that Francis E. Ayers and J. H. Jenks colluded together to withhold Hafenrichter's mortgage from record until after the loan was made and the mortgage to the building and loan association was filed for record.'   This admission was repeated in said brief, and makes a consideration of the details of the evidence on that subject unnecessary. 'Subsequent purchasers who have notice of a prior unrecorded mortgage are affected by their knowledge of it in the same way that the prior record of mortgage would affect them.'  'Priority among mortgagees and grantees depends not only upon the date of their deeds and the date of their record, but also upon the knowledge they have of the true state of facts as to the title, and of the rights and equities of those who have not fixed their priority by duly recording their deeds.'  (1 Jones on Mortgages, sec. 572; *Marshall* v. *Fisk,* 6 Mass. 24; *Dole* v. *Winslow,* 12 Metc. 157; Rev. Stat. 1874, chap. 30, sec. 30.)  It is proved in this case that after Mrs. Ayers had made this application to plaintiff in error for a loan, and about a month and a half before the mortgage to plaintiff in error

177—2

was executed and delivered, Ayers told Jenks that Mrs. Ayers owed Hafenrichter $1850 for purchase money of this property and that Hafenrichter held a mortgage on the property to secure said debt. If notice to Jenks was notice to plaintiff in error, then the rule above stated applies to this case, and Hafenrichter was entitled to the prior lien he received. If notice to Jenks was not notice to plaintiff in error, then the decree was erroneous in giving Hafenrichter priority.

"Plaintiff in error was organized in 1889 under our statute relative to building associations. Section 9 of article 8 of its by-laws provides that its board of directors may appoint advisory boards to such an extent and at such times as it may deem best. 'They shall advise with the board of directors on important topics whenever called upon to do so, and shall furnish said directors with such information relating to the matters of the association in their particular localities as they may, from time to time, require.' Article 12 of said by-laws provides that each advisory board shall consist of not less than five members, who shall elect a president, vice-president, secretary and treasurer, and may elect them from members of the association who are not members of the advisory board. Bond is required from the secretary and treasurer. Section 4 of said article requires that all monthly dues to the association shall be paid to the treasurer of the advisory board, and by him remitted to the secretary of the association at Bloomington. Section 5 of said article provides that applications for shares shall be made by or through the secretary of the advisory board and forwarded by him to the secretary of the association, and section 6 requires members wishing loans to fill blanks required by the association and present them to the advisory board for action, and the advisory board will forward them to the association.

"Plaintiff in error organized an advisory board at Aurora. J. H. Jenks was secretary and apparently treas-

urer thereof during the time covered by the events here
in controversy.   Mrs. Ayers and her husband applied to
the association, through Jenks, for stock and for the loan.
He secured the issue of stock to Ayers and its transfer
to Mrs. Ayers when he discovered an error had been made
as to the person in whose name the land was held.   Jenks
transmitted the application to the home office.   Mrs.
Ayers and her husband executed the bond and mortgage
in his presence.   The association sent the draft for nearly
$6000 to Jenks.   He caused Mrs. Ayers to endorse it on
the back and return it to him, and he deposited it in the
bank and collected it and held the money, took out of it
dues, etc., owing to the association, and paid the rest of
the money out on orders of Ayers and wife as the building
progressed.   Although plaintiff in error put in evidence
the by-laws, it also proved orally by Jenks, its witness,
that his duties as secretary of the local board were to
solicit stock, make loans, collect dues and interest, do
the general work of the secretary and treasurer of the
local board at Aurora, keep the accounts of the associa-
tion at Aurora, and to collect dues, premiums and fees
of the stockholders of the association at Aurora.   Jenks
paid off the prior Butler mortgage previously resting on
the property, recorded its release and recorded plaintiff
in error's mortgage.   It was only by Jenks the associa-
tion could prove what had actually been paid by Mrs.
Ayers upon the dues, interest and premium.   No one else
connected with the association knew, except by his books
and reports.   Counsel for the association, in interrogat-
ing Jenks as its witness, assumed he had been 'acting as
agent for the Inter-State Building and Loan Association
in Aurora,' and he so assumed in his answers.   Jenks was
the officer of the association who retained possession of
the stock upon which the loan was made, as the bond
and mortgage recited.   Jenks testified 'we' had been to
the records to ascertain the state of the title, implying he
performed that office for plaintiff in error.   Plaintiff in

error proved what statements Ayers made to Jenks as to the condition of the title, evidently on the theory that a statement by Ayers to Jenks that the property was clear was a statement to the association. Marian Hatch, called as a witness by the association, testified she succeeded Jenks as agent of the association, and had in her possession the ledger kept by Jenks containing the accounts of the payments made by him out of the proceeds of this loan to material-men and laborers on the building on the orders of Mr. and Mrs. Ayers. It is evident this was a book belonging to the association in which Jenks kept its accounts at Aurora. The abstract of title was examined and passed upon by the lawyer of the association at Bloomington, and perhaps the mortgage was drawn there; but so far as appears from the evidence every other act on behalf of the association in regard to this loan was performed by Jenks for it. Ayers and wife did not see or deal with any other officer of the association.

"The argument of plaintiff in error on the subject of notice, carried to its legitimate conclusion, produces the result that the association would not be bound by the notice of a prior unrecorded mortgage where said notice was given to any of its officers except the lawyer whom it hired to examine abstracts of title. We do not think it could relieve itself of the effect of notice to its officers by hiring a lawyer to advise it whether the proposed borrower had a good title. It is argued Jenks was the agent of Ayers and wife because they paid him $25 to go to Bloomington and try to hurry up the loan, which was being delayed. Whether this $25 more than paid his traveling expenses is not disclosed, but he evidently went because he was the agent of the association. It is claimed Jenks was agent of Mrs. Ayers because she paid him $45 for issuing stock; but the testimony of Jenks shows the rules allowed the secretary of the advisory board a fee of one dollar for each share of stock issued, and the sixty shares issued to Mrs. Ayers entitled Jenks to a fee of

$60, but he agreed to take $45 therefor. This, therefore, was a fee paid to him as an officer of plaintiff in error.

"It is insisted Jenks acted as the agent of Mrs. Ayers in paying out the proceeds of the loan to her material-men and laborers on the order of her husband or herself as the building progressed. This position is untenable. A building association furnishing money to put up a build-ing on the premises mortgaged to it, which building is usually an important part of the security for the pay-ment of the loan, does not place the avails of the loan in the hands of the mortgagor and leave it to his discre-tion whether he will put the money into the building or use it elsewhere for his other purposes. Such a course would be suicidal to the association. It requires the bor-rower to permit it to retain the money, and it pays out the money on the order of the borrower, and thus sees that the proceeds of the loan are applied to the building on the real estate given it as security. Jenks performed that responsible office for plaintiff in error. We hold he was an agent of the association for the purposes of this loan, and that notice to him of the prior unrecorded Haf-enrichter purchase money mortgage for $1850 was notice to the association. To hold otherwise would, it seems to us, practically relieve plaintiff in error from the effect of the doctrine of notice as to loans made by it through its advisory boards at places other than Bloomington, where its chief officers reside. Jenks, no doubt, intended by his action in the matter to give his association priority over the Hafenrichter mortgage, and was endeavoring to act for the benefit of his principal, the association. It follows we are of opinion plaintiff in error, through its agent, Jenks, had full notice of the unrecorded mortgage.

"But it is argued Hafenrichter did not, in his plead-ings, charge notice to plaintiff in error of the unrecorded mortgage. He did, however, in his answer to the origi-nal bill and to the cross-bill of plaintiff in error, and in his own cross-bill, charge he had a lien prior to every

one else, and this notice to plaintiff in error, through its agent, Jenks, is one item of the proof by which he seeks to establish that priority, and the rule is familiar that a party need not plead his evidence.

"It is said Hafenrichter filed his cross-bill the day after the reference to the master, without leave of court, and that it should not have been treated as included in the reference. A defendant who has answered requires no leave to file a cross-bill, and it is not too late to file a cross-bill after a reference has been made. But this cross-bill was wholly unnecessary, and the decree does not depend upon it. In each of his answers Hafenrichter set up his mortgage and averred it was a prior lien to all others. The cross-bill of plaintiff in error asked a sale of the property to pay its mortgage. It was indispensable to that relief that the court should establish the order of liens from the evidence, and direct their payment in the order of their priority out of the proceeds of the sale. (*Dillman* v. *Will County Nat. Bank*, 139 Ill. 269.) As the proofs stand, Hafenrichter must have been paid first out of the proceeds of a sale under the association's cross-bill, even if he had filed no cross-bill.

"It is asserted Hull was not entitled to the lien given him because Mrs. Ayers had no title when he made the contract to furnish materials for said building, and therefore his contract was not with the owner. Ayers testified the subject of the conveyance of this property from Hafenrichter to Mrs. Ayers of May 20, 1893, had been considered by Hafenrichter and himself before that date; that along about the first of March or last of February, 1893, a deal was made by which it was understood Mrs. Ayers was to be the owner of the premises, and that the transactions between them on May 20, the deed to Mrs. Ayers and the note and mortgage back to Hafenrichter, were the consummation of that previous contract. The questions put to Ayers on this subject were leading, but they were not objected to, and the facts so established

were not contradicted. We think this sufficient *prima facie* proof that there was a contract between the parties about the last of February or first of March, 1893, by which Hafenrichter was to convey these premises to Mrs. Ayers at the time, in the manner and for the consideration indicated by the conveyance afterwards made to her. A cottage standing on the premises was moved off, and Mrs. Ayers built a temporary structure, or shanty, on the back of the lot, and she, with her husband, moved into it and took possession, and lived there until the new building was so far completed that they could move into a part of it. The evidence does not show just when she built and moved into the shanty, but it is a fair inference, from the proofs, that she occupied it during the entire time the flats were being erected. Hull testifies the arrangement for lumber was made in the fore part of April, 1893, and that he began delivering lumber April 13, 1893. We think the proof shows that at the time the arrangement was made with Hull for the lumber Mrs. Ayers had a contract with Hafenrichter, the owner, for a warranty deed of the property, and that it is probable from the evidence she was then living upon the premises. *Paulsen* v. *Manske*, 126 Ill. 72, is conclusive that such an interest as Mrs. Ayers had would support a mechanic's lien, and inasmuch as the vendor's title might, under certain circumstances, be also subjected to a lien for labor and materials placed upon the land by the vendee, (*Henderson* v. *Connelly*, 123 Ill. 98,) we see no reason why, upon the vendee acquiring the legal title during the progress of the building, the lien should not attach to the entire title so vested in her. *Springer* v. *Kroeschell*, 161 Ill. 358; *Phœnix Mutual Life Ins. Co.* v. *Batchen*, 6 Ill. App. 621.

"It is said Hull made his contract with Ayers, and not with Mrs. Ayers, and therefore did not make it with the owner, and hence has no lien. The evidence on this subject is too voluminous to be repeated. By the testimony of some seventeen witnesses it was clearly proved

Ayers was, in fact, his wife's general agent in the construction of these flats; that he made most of the contracts with mechanics and material-men, disclosing his agency to some and not to others; that his wife told various parties in interest her husband was her agent in the construction of the building, and that she left everything to him in regard to the building and the payments; that she lived on the rear of the premises all the time the work was going on; that those delivering the material and doing the work saw her there daily and frequently conversed with her about the work, and that she frequently gave orders to them in relation to the work,— in regard to the fixtures, trimmings and mouldings. She examined the work and caused some changes to be made. Her directions, when given, were obeyed. She was present when her husband made some of the contracts. One contractor delivered most of his goods directly to her. It is clear to us that the contracts of Ayers for this building were binding upon his wife. (*Bruck* v. *Bowermaster,* 36 Ill. App. 510.) Hull did not inquire, and did not know, who owned the land until he had delivered about half of the lumber. He then learned of Mrs. Ayers' title and had a talk with her, and asked her if the lumber was all right, and she said it was. We think this contract of the agent bound the principal, though the fact of his agency and the name of his principal were not disclosed till later. It is the general rule that an undisclosed principal is liable when discovered.

"Hull charged this account on his books to both Ayers and Mrs. Ayers, and in filing his claim for lien named Hafenrichter with them as the persons from whom his demand was due. We think this does not militate against the lien. His pleadings claimed he made the contract with Mrs. Ayers, through her agent, Ayers, and the proof sustained the allegation. It may be he could also hold Ayers liable for failure to disclose his principal. It may be there were some equitable considerations which would

have subjected the land to the lien in the hands of Haf-enrichter if he had not conveyed it; but the material question now under consideration is whether Hull has a lien upon the lot as against Mrs. Ayers, and we think he has.    Errors in respect to matters not required to be included in the statement of lien do not invalidate the statement nor defeat the lien.    *Culver* v. *Schroth*, 153 Ill. 437; *Hayes* v. *Hammond*, 162 id. 133.

"It is suggested that as Hull did not file a cross-bill, and as the bill of Solfisburg for a mechanic's lien was dismissed by the final decree, therefore Hull's answer to Solfisburg's bill, in which answer Hull claimed a lien, also fell, and that Hull has no pleading to support a lien in his favor.    We do not think this position well taken. But Hull had other pleadings.    In his answer to the cross-bill of plaintiff in error Hull alleges 'that his claim here-in is for materials furnished, as set forth in his answer herein to the original bill of complaint herein, and that he is entitled to a lien upon the premises therein men-tioned, and that his lien is superior to that of said loan company, and to any claim or demand whatsoever said company may have, if any, upon the premises.'    We think this reference to his answer to the original bill permits a reference thereto for the purpose of supporting his lien. In his answer to the Hafenrichter cross-bill he again set out his claim of lien in detail.

"Plaintiff in error, by its exceptions, claims its mort-gage should have been held prior to all other liens to an amount equal to the value of the said premises on July 1, 1893; also to an amount equal to the payments made from the proceeds of said loan, or otherwise, for the erec-tion of the improvements on said premises; also to the extent to which the proceeds of its mortgage were ap-plied in the improvement of said premises; also to the extent of the money paid by Mrs. Ayers and husband in the improvement of said premises, from whatever sources derived.    Hull made the arrangement with Ayers early

in April, 1893. By it Hull was required to furnish all the lumber required for the building, and at the same figures he would have given if the whole bill had been furnished for him to figure on in advance. He began furnishing lumber on the contract April 13. His lien attached to the land at the making of the contract and to the building as it progressed. The mortgage to the association was dated July 1, acknowledged July 4 and recorded July 8, 1893, and as against Hull did not become a lien until the latter date. Under section 17 of the Mechanic's Lien act, in force in 1893, this mortgage could not operate upon the building erected or materials furnished until the lien in favor of the person doing the work or furnishing the materials was satisfied. The association introduced proof of the value of the premises on July 11, 1893, but that was being daily increased by the addition of labor and material, and its value on July 8, 1893, was not shown. No proof was offered by plaintiff in error as to the value of the land separate from the building, nor as to the extent to which its loan, as applied, increased the value of the property, nor as to the extent to which labor and material furnished by others than Hull increased the value of the property, nor any proof which would enable the court, under the statute then in force, to give plaintiff in error any lien upon any part of the premises until Hull was paid.

"We * * * are of opinion that the decree of the court below has not * * * been successfully assailed. It will therefore be affirmed."

We concur in the foregoing views and in the conclusion reached by the Appellate Court, whose opinion, so far as it is above quoted, is hereby adopted as the opinion of this court. Accordingly, the judgment of the Appellate Court is affirmed.            *Judgment affirmed.*