[Civ. No. 9284. Fourth Dist., Div. Two. Dec. 17, 1969.]

HOWARD A. DEASON & CO., et al., Plaintiffs and Respondents, v. COSTA TIERRA LTD., et al., Defendants and Appellants.

## Counsel

Best, Best & Krieger, Carroll, Pares & Blakey and John H. Barnard for Defendants and Appellants.

Leonard A. Bock for Plaintiffs and Respondents.

## Opinion

**HILLIARD, J. pro tem.**\*—Defendants appeal from a judgment decreeing the foreclosure of plaintiffs' mechanic's liens for work performed in connection with the construction of 34 apartments consisting of separate multiple units in a subdivided tract located in the City of Palm Springs.

This controversy involves two actions brought by various subcontractors to foreclose their mechanic's liens. The actions were consolidated for trial and the appeals from the judgments in both cases have been consolidated.

---

\*Assigned by the Chairman of the Judicial Council.

Defendant Costa Tierra Ltd., a corporation, constructed the apartment units which are the subject of these claims for mechanic's liens. Defendant Palo Fierro Estates, a general partnership, in which defendants William Aiken and Herbert Rauch were partners, purchased the apartment units from Costa Tierra Ltd. prior to the institution of these actions. Defendants Coachella Valley Savings & Loan Association and Silver Gate Savings & Loan Association were construction lenders under a participating loan agreement. The appeal is from those portions of the judgment establishing the amount of the liens, holding them valid and ordering their foreclosure. No appeal has been taken from that portion of the judgment imposing an equitable lien against defendant Coachella Valley Savings & Loan Association and Silver Gate Savings & Loan Association.

Costa Tierra Ltd. as owner-builder, contracted individually with each of the various crafts and trades involved in the project, including the plaintiffs. The project was commenced in January 1964, and proceeded without interruption until it was completed. Notice of completion was signed on September 14, 1964, and recorded September 18, 1964. Plaintiffs filed their respective liens between December 11, 1964, and April 26, 1965.

It is the contention of defendants that plaintiffs' claims of lien were not timely filed after recording of the notice of completion by defendant Costa Tierra Ltd. Section 1193.1 of the Code of Civil Procedure[1] sets forth the time limits within which a claim may be filed. Subdivision (c) of this section provides that an original contractor shall have 90 days after completion of the "work of improvement" within which to file for record his claim of lien. However, if the owner shall "within 10 days after the completion of the work of improvement file for record a notice of completion" an original contractor must file his claim of lien within 60 days after the date of filing of the notice of completion. Since plaintiffs contracted directly with the original owner, they were original contractors as that term is used in the statute. (*Scott, Blake & Wynne* v. *Summit Ridge Estates, Inc.*, 251 Cal.App. 2d 347, 357 [59 Cal.Rptr. 587].) The validity of defendants' contention depends upon whether the work of improvement was completed in September of 1964, as urged by defendants, or whether completion was dependant upon, and determined by, acceptance of the improvement by the City of Palm Springs. Defendants also urge that there are separate works of improvement involved and the rights of the claimants must be determined upon that basis. More specifically, defendants argue that labor and material, consisting of structural electric requirements, cement work, roofing, plumbing, tile work and installation of swimming pools, should be considered as works of improvement in construction of the residential apartment units; that curbs, streets and gutters, yard lights and landscaping

[1] All code section references in this opinion are to the Code of Civil Procedure.

are separate works of improvement under section 1189.1 subdivision (a)[2]; that work done on the roof after notice of completion was the subject of a separate contract; that whether any separate work of improvement was subject to acceptance by public or governmental authority must be specifically determined; that, although special findings of fact and conclusions of law were requested, the trial court failed to make any finding regarding separate works of improvement and whether the work performed under such separate contracts affected the time of completion or validity of the notice of completion as to other lien claimants.

Plaintiffs argue that the entire work of improvement was subject to acceptance by the City of Palm Springs pursuant to the provisions of section 1193.1, subdivision (e); that acts constituting such acceptance did not occur prior to March 24, 1965, and the liens were each timely filed.

The trial court found that the entire project, including both construction of apartment units and on-site and off-site lot improvement, was a single work of improvement subject to acceptance by governmental or public authority under section 1193.1, subdivision (e).

The primary issue presented for our determination is whether the evidence sustains the finding that the entire project was subject to acceptance by the City of Palm Springs. A subsidiary question is whether there are separate works of improvement subject to acceptance by the City of Palm Springs. A further secondary issue is whether substantial work was done under any of the original contracts after September 18, 1964, thereby invalidating the notice of completion. The final problem for our solution is whether this appeal is from the proper judgment.

I

■ We first consider the contention that the entire work of improvement was subject to acceptance by a public or governmental authority. The trial court found that the entire project was "of the type falling within the provisions of 1193.1(e)," "was incomplete" until accepted by the city, and "was not accepted by the City . . . until March 24, 1965." Section 1193.1 subdivision (e), prior to its amendment in 1963, read as follows: "If a work of improvement is of the character referred to in Section 1184.1 of this code

---

[2]Code of Civil Procedure, section 1189.1, subdivision (a) reads: "If the work of improvement of the character referred to in Section 1184.1 is provided for in a separate contract from any contract or agreement with respect to the erection of residential units or other structures upon said lot or tract of land, then the work of improvement of the character referred to in that section shall be deemed a separate work of improvement and the commencement thereof shall not constitute a commencement of the work of improvement consisting of the erection of any residential unit or other structure upon said lot or tract of land."

and is subject to acceptance by any public or governmental authority, the completion of such work of improvement shall be deemed to be the date of such acceptance."

Completion was then dependent upon acceptance by public authority only if the work was of the character described in section 1184.1 which provides for imposition of a lien upon the lot or tract of land for grading, filling or otherwise improving the land itself, or the streets, highways or sidewalks fronting or adjoining the lots, the installation of sewers or other public utilities and construction of areas, vaults, cellars or rooms under the sidewalks. The 1963 amendment deleted the reference to section 1184.1 and added the words "the" immediately preceding "work" and "improvement" in the first reference in the section to that subject. As amended and in effect at the time these claims of mechanic's liens were asserted, this section read as follows: "If the work of the improvement is subject to acceptance by any public or governmental authority, the completion of such work of improvement shall be deemed to be the date of such acceptance."

Plaintiffs urge that the following evidence supports the conclusion reached by the trial judge:

First, the contracts of plaintiffs with the defendant owner-builder. Said contracts provide that the work and material shall conform with the requirements of applicable ordinances and rules of any governmental agency, be subject to approval and inspection by the city, and the work not be deemed completed until such inspection and approval, acceptance by the owner, and proper filing of notice of completion.

Second, the subdivision map which notes "all work shall be done according to the standard plans and specifications of the City of Palm Springs."

Third, the requirement of the Department of Health for final inspection of swimming pools.

Fourth, the Planning Commission minutes providing that granting of conditional use and building permits is conditioned upon approval by the public works department of streets, driveways, fire hydrants, sewage and waste disposal systems; and requiring future submission of a landscaping plan.

Fifth, the subdivision ordinance[3] requiring issuance of a certificate by the city engineer stating that the subdivider has complied with ordinance

[3]The subdivision ordinance provides for acceptance by the city, through its Public Works Department, of curbs, gutters and sidewalks, while the building regulations

regulations and planning commission action or, in the alternative, has posted bond to assure completion of *required* improvements.

Sixth, Ordinance Number 647 of the City of Palm Springs, adopting the Uniform Building Code, and requiring that no building or structure shall be used or occupied until the building official has issued a certificate of occupancy, and that inspection and approval are required of the work of improvement during its various stages of progress.

Seventh, the existence of various documents indicating that one of the conditions for acceptance of the work of improvement by the City of Palm Springs was posting of a maintenance bond.

Eighth, the inspector's log from the engineering division of the Department of Public Works of Palm Springs reflecting that on March 24, 1965, the city engineers waived the maintenance bond because "The complications are too time-consuming, etc., and his visual inspection shows it looks okay, then all work is completed and acceptable."

Ninth, testimony of defendants' expert witness that his understanding of completion was that if all the code requirements concerning building safety were complied with, this would be acceptance.

Defendants assert that there is a distinction between "acceptance" as used in section 1193.1, subdivision (e) and "approval" as used in the ordinances, minutes and correspondence of the city. They contend that the 1963 amendment of section 1193.1, subdivision (e) by deletion of the phrase "is of the character referred to in Section 1184.1 of this code" was accomplished at the same time that section 1192.1 was amended. Section

---

require inspection and approval at various stages of progress of construction, and have mandatory provisions for issuance of certificates of occupancy.

*Palm Springs Subdivision Ordinance.*

"9664. CERTIFICATE BY CITY ENGINEER. A certificate by the City Engineer certifying that the subdivider has complied with one of the following alternatives:

"9664.1. IMPROVEMENTS. All improvements have been installed in accord with the requirements of the regulations and with the action of the Planning Commission giving conditional approval of the tentative plat, or

"9664.2. BOND. A bond or certified check has been posted, which is available to the City, and in sufficient amount as to assure such completion or all required improvements."

. . . . . . . . . . . . . . . .

"9666. OTHER DATA. Such other certificates affidavits, endorsements, or deductions as may be required by the Planning Commission in the enforcement of these regulations."

Article 963 is entitled "Required Improvements" and section 9632 of that article provides for improvement of new streets in the subdivision.

1192.1, subdivision (b)[4] covers the subject of claims against public agencies by subcontractors for labor and materials furnished upon certain works of improvement, and sets forth the procedures to be followed in filing such claims. It provides that within 10 days after the completion of the contract, structure or work improvement, or cessation of labor thereon for a period of 30 days, the public agency may record an appropriate notice of the completion or cessation of labor. Subdivision (b) of section 1192.1 was amended in 1963 by adding to the second sentence the language relating to "acceptance of completion by resolution, minute order or other official act of the awarding authority." It is urged that these concurrent amendments of 1193.1, subdivision (e) and 1192.1, subdivision (b) evidence a legislative intent to promote uniformity in the concept of acceptance and require some official and formal act of the awarding authority of the contractor as requisite evidence of acceptance.

Section 1192.1, subdivision (b), however, refers only to completion deemed to have occurred after 30 days continuous cessation of labor, and the acceptance of *completion* by resolution, minute order or other official act of the awarding authority. Thus the requisite acceptance set forth in this section is to be distinguished from the "acceptance" of the work of improvement as contemplated by 1193.1, subdivision (e).

Routine inspections and approvals prior to commencement and during the progress of the work of improvement, as required by the subdivision ordinance and the building code, are not equivalent to a requirement of acceptance of the entire project by the governmental authority and the parties obviously may not impose that condition upon the city by terms of their private contract. Certificates of occupancy are issued after final inspection and determination that the building complies with provisions of the building code and relate only to the purposes for which a building is used or intended to be used. They are not evidence of acceptance or requirement of acceptance of the work of improvement. Minutes of the

---

[4]"Except as to contracts awarded under the State Contract Act, Chapter 3, Part 5, Division 3, Title 2 of the Government Code, a cessation of labor on any work of improvement at any time after the commencement thereof, for a continuous period of 30 days or more, shall be deemed a completion of the contract, structure, or work of improvement. Within 10 days after the acceptance of completion by resolution, minute order or other official act of the awarding authority . . . of any contract, structure, or work of improvement to which Chapter 3 of Division 5, Title 1 of the Government Code applies, the State, or any public board, commission, or officer thereof, or any political subdivision thereof, may file for record in the office of the county recorder of the county or counties where the property is situated a notice setting forth the date when the project was accepted or on which cessation from labor occurred, together with the name of the State . . . or such political subdivision thereof, and a description of the property or public work or structure sufficient for identification, and the name of the contractor or contractors and the names of the sureties, if any . . ."

planning commission indicate only that certain portions of the improvement, i.e., streets, driveways, sidewalks, sewage and waste disposal installations, were subject to acceptance by the city by approval of its public works department. Interoffice memoranda between employees of the Public Works Department concerning maintenance bonds and the comment "then all the work is completed and acceptable" do not establish that the work was "subject to acceptance" by the city.

The fact, if it be a fact, that the public or governmental authority accepts a work of improvement is relevant only if the work is subject to acceptance. There is a distinction between the fact of acceptance and the requirement that the work be subject to acceptance.

Plaintiffs claim that the requirements of the building code relating to interim and final inspections and issuance of certificates of occupancy, constitute a requirement for "approval" and hence the work of improvement is subject to acceptance by the governmental agency. Defendants argue on this appeal that most localities throughout the state have adopted similar building codes governing all phases and types of construction; that if this be deemed a requirement for "acceptance" by a governmental agency, then subdivisions "(c)" and "(d)" of section 1193.1 relating to time for filing liens after notice of completion or the statutory equivalent of completion would not be effective in most instances. We do not believe the Legislature intended the latter result.

The 1963 amendment to 1193.1, subdivision (e) eliminated the requirement that the work of improvement be of the character referred to in section 1184.1 and thus expanded and enlarged the coverage which may be afforded by that section. Counsel have not cited nor have we discovered any authority defining acceptance as used in 1193.1, subdivision (e) and cases considering the effect of that section prior to its amendment have involved the existence of an ordinance or resolution by the governmental authority requiring acceptance of the work. (*Southwest Paving Co.* v. *Stone Hills,* 206 Cal.App.2d 548 [24 Cal.Rptr. 48] (streets); *Richards* v. *Hillside Development Co.,* 177 Cal.App.2d 776 [2 Cal.Rptr. 693] (streets, sewers and water mains in a subdivision); *McGaw* v. *Master Craft Homes,* 105 Cal.App 2d 304 [233 P.2d 185] (street work in subdivision under private contract).)

We hold that the phrase "subject to acceptance" as set forth in section 1193.1, subdivision (e) is not to be equated with inspection and approval or the issuance of certificates of occupancy under building regulations, but must find its base in some legislative enactment by the public authority. No such ordinance or resolution had been adopted by the City of Palm Springs, with the exception hereinabove noted for street work, and we conclude that the entire work of improvement was not subject to acceptance by the city.

## II

■ Our next inquiry is whether the contracts for (1) installation of streets, curbs and gutters by plaintiff Yeager, (2) landscaping by plaintiff Thome, and (3) installation of yard lights by plaintiff Ziegler were separate works of improvement under provisions of section 1189.1, subdivision (a).

The evidence establishes that the Yeager and Thome contracts were separate from any contract or agreement respecting erection of the residential units. The trial court found: "1. Plaintiffs YEAGER, THOME and ZIEGLER rendered improvements, labor and materials, of the type falling within the provisions of CCP 1189.1.

"2. Defendants did not comply with any of the provisions of CCP 1189.1; they did not enter into any contract for the protection of said plaintiffs nor did they post any bond."

Whether these works of improvement were "of the character referred to in section 1184.1" requires a consideration of each claim.

The improvements mentioned by section 1184.1 have been characterized by text writers as "civic," (Legal Aspects of Real Estate Transactions (Cont.Ed.Bar 1956), p. 415; California Land Security and Development (Cont.Ed.Bar 1960), p. 728) since the governmental authority may have a continuing concern in their installation and maintenance as it affects other properties and governmental functions of the public entity.

Plaintiff Yeager furnished labor and material for installation of the streets, curbs, gutters and sidewalks in the tract. This work was provided for in a separate contract from any contract or agreement with respect to the erection of residential units, was clearly within the scope of section 1184.1, and is deemed to be a separate work of improvement under section 1189.1. It was subject to acceptance by the city through issuance of certificate by the city engineer as required by the subdivision ordinance and the Planning Commission. Although the trial court found that the "project" was not accepted by the city until March 24, 1965, there is no finding of acceptance of this specific work of improvement. Defendants contend that acceptance by the city on or before September 23, 1964, is evidenced by inter-office memorandum between employees of the Public Works Department reciting "All work completed and final. Holding for maintenance bond since 9/23/ 64. Have they been received." The record does not disclose the issuance of any certificate of compliance by the city engineer as required by section 9664 of subdivision ordinance, nor any other formal act of acceptance by the city. The inter-office memorandum does not meet the requirements of

acceptance and there is no evidence that the city has ever accepted this particular work of improvement.

We conclude that the work of improvement performed by plaintiff Yeager was a separate contract, dependant upon acceptance by the City of Palm Springs, and his claim of lien was timely filed.

■ Plaintiff Thome recorded his mechanic's lien on January 20, 1965, reciting a claim in the sum of $4,119.30 for landscaping and landscaping maintenance performed between June 15, 1964, and November 15, 1964. On April 26, 1965, he recorded an amended mechanic's lien in the sum of $5,908.30, also for landscaping and landscaping maintenance for the period from June 1, 1964, to January 27, 1965. Defendants concede that Thome had a basic right to a mechanic's lien on his landscaping contract but not for maintenance work thereafter. The validity of defendants' position with respect to Thome's landscaping maintenance claim depends upon the nature of the work. In plaintiffs' brief, it is alleged that such work consisted of "furnishing fertilizer, spray, planting lawn and shrubs." Section 1182, subdivision (a) provides: "For the purposes of this chapter, 'work of improvement' includes, but is not restricted to, . . . the seeding, sodding, or planting of any lot or tract of land for landscaping purpose . . ." Moreover, the case of *California Portland Cement Co.* v. *Wentworth Hotel Co.,* 16 Cal.App. 692, 707 [118 P. 103, 113], holds that the furnishing and planting of seeds, trees and shrubs, and the caring for the same for such a period of time as to insure that they are well settled on the ground constitutes improvements for which a lien may be had. (See also *Nolte* v. *Smith,* 189 Cal.App.2d 140 [11 Cal.Rptr. 261, 87 A.L.R.2d 996].)

On the other hand, if Thome's work consisted of mowing the lawn and watering it and the shrubs as alleged by defendants, then it would appear that the lien for that work was improperly granted. (*Young* v. *Shriver,* 56 Cal.App. 653 [206 P. 99]; *California Portland Cement Co.* v. *Wentworth Hotel Co., supra.*) This follows because permanency of improvement is an essential characteristic of work giving rise to a lien (*Ogden* v. *Byington,* 198 Cal. 151, 156 [244 P. 332]).

Landscaping, and such maintenance as may be necessary to insure that the planting is well established on the ground, is a work of improvement of the character referred to in section 1184.1. In this case it was the subject of a separate contract from any agreement with respect to erection of the residential units and is deemed to be a separate work of improvement under provisions of section 1189.1. It is not, however, subject to acceptance by the city under 1193.1, subdivision (e). Defendants allege that the only evidence of completion of the initial landscaping contract is contained in the billing statement sent to defendant Costa Tierra, dated September 4,

1964, which contains the notation, "Project completed, Thank you." The notice of completion was filed September 18, 1964, and the original and amended lien claims were recorded beyond the statutory period thereafter. If the notice of completion was premature and void and Thome completed the work on his basic contract on or before September 4, 1964, then his claim was not timely filed. On the other hand, if the subsequent work was maintenance under the original contract, then the trial court must decide how much, if any, was necessary to establish and settle the planting. This will determine the date of completion of the work and whether the lien was timely filed.

Defendants also contend that the liens of Thome are fatally defective because of the erroneous description contained therein. The deficiency here is the absence of the words "northwest quarter" from Thome's mechanic's lien. However, plaintiff's amended lien added the words, "commonly known as Palo Fierro Estates" and the trial court found this description sufficiently described the real property for identification and that no defendant was misled or prejudiced by any deficiency.

Section 1193.1, subdivison (j), provides that a claim of lien shall contain, inter alia, "a description of the property sought to be charged with the lien sufficient for identification."

As a general rule, the description of property sought to be charged with the lien will be deemed sufficient if it enables a party familiar with the locality to identify the property with reasonable certainty to the exclusion of others. (*Hollenbeck-Bush Planing Mill Co.* v. *Roman Catholic Bishop,* 179 Cal. 229, 231 [176 P. 166 ]; *Union Lbr. Co.* v. *Simon,* 150 Cal. 751, 758 [89 P. 1077, 1081]; *Borello* v. *Eichler Homes, Inc.,* 221 Cal.App.2d 487, 492 [34 Cal.Rptr. 648].) Thus, errors in the description may be disregarded if the identification of the property is otherwise sufficient and where the notice of lien which is recorded is not fraudulent and does not mislead the owner or innocent third persons. (Code Civ. Proc., § 1196.1; 54 Cal.L.Rev. 179, 187; *Borello* v. *Eichler Homes, Inc., supra,* 221 Cal.App. 2d 487, 492-494; *American Transit Mix Co.* v. *Weber,* 106 Cal.App.2d 74, 77-78 [234 P.2d 732].)

Defendants have not met their burden of proof on the issues of fraud and actual prejudice. (*Wand Corp.* v. *San Gabriel Valley Lbr. Co.,* 236 Cal.App.2d 855, 862 [46 Cal.Rptr. 486].) The finding of the trial court as to the sufficiency of the description of the property is supported by substantial evidence and cannot be here disturbed (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557]; *Pearson* v. *Norton,* 230 Cal.App.2d 1, 7 [40 Cal.Rptr. 634]).

Plaintiff Ziegler's initial contract was for electrical work upon the

residential units. Subsequently, he agreed to furnish and install yard lights on the premises on a labor and material basis under terms of a document captioned "Extra Work Order." The trial court found with respect to Ziegler's claim "That all work was completed on October 16, 1964," and that "Plaintiff has not been paid $2,948.00 on the contract *nor for extras* having the reasonable value of $3,538.33." (Italics added.) We might imply from this finding that the trial court determined there was only one contract, supplemented by extras, for the electrical work. Such finding is not consistent with the further finding that Ziegler "rendered improvements, labor and materials, of the type falling within the provisions of CCP 1189.1."

Ziegler testified that he did not complete the installation of yard lights until September 30, 1964; that thereafter during the month of October he connected ranges and ovens and completed the change of a timing system on the yard lights on October 16, 1964. All of these dates are subsequent to the notice of completion. Defendants urge that the yard light work was under a separate contract and was a separate work of improvement under provisions of section 1189.1, subdivision (a).

Assuming arguendo that the notice of completion recorded September 18, 1964, was valid and effective, then Ziegler's lien filed December 11, 1964, was not timely filed within 60 days. (Code Civ. Proc., § 1193.1.) We have searched the record and find no evidence of the date of completion of the basic contract under this theory. If this be deemed a separate contract under section 1189.1, then the claim of lien was timely filed for the work performed under such contract only. If it represents extra work of substantial nature done under his original contract, then the notice of completion was premature and void.

We take judicial notice of the fact that yard lights, used primarily for artistic and decorative effect in the outlining and illumination of paths, walks or plantings, are an integral part of the landscaping scheme or design. This is particularly true in recreation or resort areas such as Palm Springs. It is therefore the character of work referred to in section 1184.1 and may, under proper circumstances, be deemed a separate work of improvement under section 1189.1. Defendants concede that Ziegler's lien was timely filed for the additional work performed under such separate contract only.

Defendants, pursuant to section 634, made a written request of the trial court for special findings upon the following issues:

"9. Whether or not the work by Ziegler on the yard lights and switching of time clocks, or either of them, is deemed a separate work of improvement under the provisions of CCP 1189.1.

"10. Whether or not such work by Ziegler affected the time of completion or validity of the notice of completion as to any other lien claimant.

"27. Whether or not the work on the residential units, the work by Yeager, the landscaping work by Thome, the yard lights work by Ziegler and the roof work by Smith after the Notice of Completion were each separate works of improvement, to each of which the mechanic's lien statutes must be applied particularly.

"28. When was each work of improvement completed."

No such specific findings were made by the trial court and, as a result, there are possible conflicting findings on this issue. Section 634, as then applicable, provides that if there is ambiguity or conflict the appellate court "shall not infer that the trial court found in favor of the prevailing party on such issue." This is a material issue of fact. The trial court based its judgment upon the premise that the entire work of improvement was subject to acceptance by the City of Palm Springs. Since all claims of lien would have been timely filed under that concept, the court below apparently did not regard the finding of separability of the contracts to be necessary. For the reasons hereinbefore stated, we do not agree that all work of improvement on this project was subject to acceptance by the City of Palm Springs. Upon retrial, the court must determine whether there were separate contracts with Ziegler either in fact, or deemed to be such under provisions of section 1189.1, subdivision (a).

## III

We then reach the question whether the lien of plaintiff Smith for roofing work done after notice of completion was based upon a separate contract and timely filed.

Smith was the roofing contractor and completed his part of the work by July 6, 1964. At the commencement of his work, he informed defendant's assistant superintendent that the roof, as designed by the architect, was defective and would leak. Nevertheless, he was instructed to proceed with the roofing in accord with the plans and specifications. His prediction that the roof would leak proved to be correct.

In October 1964, he discussed with the defendant Costa Tierra's job superintendent the necessity for additional work to correct the leaking condition of the roof. It was agreed that the work be done and that Smith would assume one-half of the cost. This additional work was completed on October 23, 1964.

Plaintiffs contend that the work was contemplated under the original

contract, is of substantial nature, accomplished after September 18, 1964, and thereby nullifies the notice of completion.

Defendants urge that this work was done under a separate contract and does not affect the right to file liens arising under other contracts nor invalidate the notice of completion, and concede that this claim of lien was timely filed and is valid to the extent of the additional work. Upon retrial the court must find whether the additional work was performed as part of the basic contract or if it was the subject of a separate contract. If it is determined that this work was contemplated by the original contract and is substantial in nature (32 Cal.Jur.2d, p. 677), then the notice of completion was premature, invalid and of no effect as to all lien claimants. Such finding will of necessity require a consideration of timely filing of all liens excepting that of plaintiff Yeager.

We summarize by noting that the Yeager claim is a separate contract subject to acceptance by the city and is timely filed. The Thome claim for landscaping is deemed to be a separate contract under section 1189.1, but not subject to acceptance by the city. Insofar as it purports to be for maintenance in excess of that necessary to establish the planting, it is not a lienable item. The Ziegler claim for yard lights is either a separate work of improvement under section 1189.1 or is under the original contract, and this requires a specific finding by the trial court. The Smith claim is either a separate work of improvement in fact or the completion of his original contract, and the trial court must resolve that question. The validity of the lien claims of all other plaintiffs is dependent upon specific findings by the trial court as to which, if any, plaintiffs performed substantial work on the project under their original contracts after the notice of completion.

The finding of the trial court that there was substantial work after notice of completion, thus invalidating the notice of completion, is vague and indefinite since it may relate to work performed under separate contracts either by virtue of provisions of section 1189.1, subdivision (a) or in fact. In order to clarify this the court, upon retrial, must find the nature and extent of such work and by whom it was performed.

We note, in passing, one minor item in connection with the lien claim of plaintiff Hoams who installed the swimming pools. His construction work was completed on approximately August 20, 1964. Thereafter he did some maintenance work on the pools such as cleaning and furnishing chlorine. His lien claim included the sum of $35.05 for chlorine, and this was allowed by the trial court. It is clear that the use of chlorine in a swimming pool cannot be classified as a permanent improvement, and this is not a lienable item. The evidence fails to establish that any of Hoams' work was subject to acceptance by the city.

## IV

██ We next consider plaintiffs' argument that this appeal is not from the proper judgment. This merits our attention since it raises a jurisdictional question relating to timeliness in filing the notice of appeal.

The record discloses that after entry of findings, conclusions and judgment on December 15, 1967, the defendants filed a motion for new trial supported by declaration of their counsel which stated "that the Motion for a New Trial should be granted to modify the judgment under the power given in C.C.P. 662 to reflect the existence of the C.C.P. 1193.2 bonds, and that the property has been freed from the effects of the liens and the actions brought to foreclose them." A minute order was entered January 19, 1968, granting the motion "for the limited purpose of introducing eight bonds into evidence" and the findings, conclusions and judgment were ordered modified as requested. The formal modified judgment was entered on February 5, 1968, in accord with the minute order excepting that the judge deleted therefrom the phrase "and this action to foreclose such liens." Motion to vacate this modified judgment by reinstating the deleted phrase was granted and judgment entered on March 6, 1968. Appeal was taken from this final judgment.

It is plaintiffs' contention that the court, having granted the motion for new trial and modified the judgment in accord with section 662,[5] was thereafter divested of power to vacate and further modify the judgment under section 663.[6]

In this connection, plaintiffs urge:

1. That the first modification of judgment was granted and judgment

---

[5]Code of Civil Procedure, section 662. "In ruling on such motion, in a cause tried without a jury, the court may, on such terms as may be just, change or add to the findings, modify the judgment, in whole or in part, vacate the judgment, in whole or in part, and grant a new trial on all or part of the issues, or, in lieu of granting a new trial, may vacate and set aside the findings and judgment and reopen the case for further proceedings and the introduction of additional evidence with the same effect as if the case had been reopened after the submission thereof and before findings had been filed or judgment rendered. Any judgment thereafter entered shall be subject to the provisions of sections 657 and 659 of this code."

[6]Code of Civil Procedure, section 663. "A judgment or decree, when based upon findings of fact made by the court, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of such party and entitling him to a different judgment:

"1. Incorrect or erroneous conclusions of law not consistent with or not supported by the findings of fact; and in such case when the judgment is set aside, the conclusions of law shall be amended and corrected.

"2. A judgment or decree not consistent with or not supported by the special verdict."

entered under the authority of section 662; that this section provides that a judgment so entered "shall be subject to the provisions of sections 657 and 659 of this code"; that sections 657 and 659 relate only to motions for new trial; and that this language of section 662 indicates a legislative intent to exclude any relief under section 663. This argument rests upon the premise that, in ruling upon a motion for new trial by modifying the judgment under section 662, the court is foreclosed from thereafter granting a motion under section 663 to enter another and different judgment.

2. That the motion to vacate the modified judgment was made upon the grounds that the judgment was not supported by the findings of fact and conclusions of law; that the only ground specified in section 663 vesting power in the court to vacate the judgment and enter a different judgment is "incorrect or erroneous conclusions of law not consistent with or supported by the findings of fact"; that the order granting the motion was not within the grounds authorized by the statute and is void; and that the judgment entered pursuant to that order is also void.

Modification of the judgment of February 5, 1968, or reopening of the case for further proceedings under section 662 is "in lieu of granting a new trial" and therefore an alternate procedure available to the trial court. "[P]roper practice is to deny the motion for new trial and, in conjunction with such ruling, to grant the alternative relief provided in such section." *(Bureau of Welfare* v. *Drapeau,* 21 Cal.App.2d 138, 149 [68 P.2d 998]; *Jacuzzi* v. *Jacuzzi Bros., Inc.,* 243 Cal.App.2d 1, 23 [52 Cal.Rptr. 147].) In a similar situation in which the trial court granted a motion for new trial and the minute order added the phrase "pursuant to section 662 of the Code of Civil Procedure," it was held that the trial court "merely intended to grant the alternative relief provided for by section 662" and that the order should be construed as a denial of the motion for new trial and the granting of such alternative relief. Appeal was deemed to lie only from the second judgment. *(Avery* v. *Associated Seed Growers, Inc.,* 211 Cal.App.2d 613, 621-622 [27 Cal.Rptr. 625].)

In the case before us the minute order of January 19, 1968, discloses that motions were made for new trial and modification of judgment. The motion for new trial was granted for the limited purpose described above. A proposed modification of judgment was filed and the findings, conclusions and judgment amended in conformity with such proposed modification. The effect of this order must be determined by reference to the entire order, not by any isolated phrase, *(Roraback* v. *Roraback,* 38 Cal.App.2d 592, 596 [101 P.2d 772]) and with consideration given to the circumstance "surrounding the making of the order and the action of the court pursuant thereto." *(Gardner* v. *Rich Mfg. Co.,* 68 Cal.App.2d 725, 740 [158 P.2d 23]; *Talman* v. *Talman,* 229 Cal.App.2d 39, 43 [39 Cal.Rptr. 863].) An

application of this rule clearly supports the conclusion that the trial court intended to proceed under section 662. We construe the order as a denial of the motion for new trial and the granting of such alternative relief.

 Section 662 is to be liberally construed. (*Western Electro-Plating Co.* v. *Henness,* 196 Cal.App.2d 564 [16 Cal.Rptr. 691]; *Oliver* v. *Boxley,* 181 Cal.App.2d 471, 478 [5 Cal.Rptr. 468].) The statutory reservation of right to motion for new trial after entry of the modified judgment does not exclude the concurrent right of the trial court to correct its own judicial error by proceeding under section 663.

 In considering defendants' second contention on this subject, we find that the relief sought upon the motion to vacate the modified judgment was within the jurisdiction of the court under section 663. That section expressly authorizes the trial court to correct judicial error by amending and correcting conclusions of law to conform with the findings of fact. This requirement of the section, however, is merely directory. (*Wilkinson* v. *Grant,* 46 Cal.App. 429, 433 [189 P. 319].)

The fact that the judgment alone was amended without any further change in the conclusions of law is of no consequence. The judgment itself is "the real conclusion of law, and supersedes any conclusion of law embraced in the decision," (*Roberts* v. *Hall,* 147 Cal. 434, 437 [82 P. 66]) and is within the purview of section 663. The appeal was properly taken from the judgment of March 6, 1968. (*Neff* v. *Ernst,* 48 Cal.2d 628, 634 [311 P.2d 849].)

The judgment in favor of plaintiff Yeager is affirmed. That portion of the judgment awarding all plaintiffs money damages against defendant Costa Tierra Ltd. is affirmed. In all other respects the judgment is reversed. Each party to bear his own costs on appeal.

Kerrigan, Acting P. J., and Tamura, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 11, 1970.