(Nos. 23898, 23906.—

THE UNITED CORK COMPANIES, Appellant, *vs*. CHARLES A. VOLLAND *et al*. Appellees.—THE UNITED CORK COMPANIES *vs*. CHARLES A. VOLLAND *et al*. Appellees.— (CARL WESTBERG AND COMPANY, Appellant.)

*Opinion filed February 12, 1937—Rehearing denied April 8, 1937.*

OTTO G. RYDEN, (NORMAN A. BECK, of counsel,) for appellant The United Cork Companies.

KINNE, SCOVEL, ROBSON & MURPHY, (HARRY C. KINNE, of counsel,) for appellant Carl Westberg and Company.

ROSENBERG, TOOMIN & STEIN, and CASTLE, WILLIAMS, LONG & MCCARTHY, (BENJAMIN ROSENBERG, of counsel,) for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

The United Cork Companies, an Illinois corporation, and Carl Westberg and Company, a corporation, obtained a decree in the circuit court of Cook county awarding them mechanics' liens on certain premises. The Appellate Court for the First District reversed the decree as to such liens and separate appeals were perfected to this court. Inasmuch as the matters urged in the separate appeals are embraced in the same order of the Appellate Court and may be determined together, the appeals have been consolidated for consideration and opinion.

The bill was filed by the United Cork Companies, an Illinois corporation, to foreclose a lien for furnishing and installing cork insulation under a contract with Charles A. Volland, doing business as the Chicago Lawn Pure Ice Company. Carl Westberg and Company, a corporation, and two other lien claimants, filed intervening petitions.

The Westberg claim is for labor and materials furnished in the construction of certain buildings on the premises. No question is presented as to the claims of the other two intervenors. For convenience, the United Cork Companies, an Illinois corporation, will be referred to as complainant and the Westberg Company will be referred to as intervenor.

The Appellate Court reversed the decree as to complainant on the ground that it failed to prove it was a party to the contract and that the evidence shows the contract was made by Volland with a New York corporation of the same name and assigned to complainant, but the assignment was not pleaded. The decree as to the intervenor was reversed on the ground of a fatal variance between the date of completion, shown by the evidence, and the date alleged in the claim for lien and the intervening petition.

The decree found that Volland, doing business as the Chicago Lawn Pure Ice Company, entered into a contract with complainant whereby the latter was to furnish and install cork insulation on Volland's premises at the price of $9700; that the contract was fully performed by complainant, and that the amount due it under the contract and for extras was $3498.22. The decree also found that the amount due intervenor, under its contract and for extras, was $3027.29; that the complainant and the intervenors are entitled to liens, prior to that of a trust deed to the West Englewood Trust and Savings Bank; that said bank had been closed by the Auditor of Public Accounts and that appellee Benjamin G. Kilpatrick, is the successor trustee. The property was ordered sold in case of default in payment of liens. Volland had been adjudicated a bankrupt. Appellees Henry Lang, Jr. and Fred W. Vogt, became purchasers in the bankruptcy proceeding, subject to mechanics' liens and mortgage indebtedness.

As to the claim of complainant the only question raised here is whether the holding of the Appellate Court was justified under the pleadings and the evidence. The bill

alleged that complainant, an Illinois corporation, entered into the contract with Volland, doing business as the Chicago Lawn Pure Ice Company and that the work had been completed and accepted and there was a balance due. The answers of appellees neither admit nor deny that complainant was a party to the contract, but call for strict proof. That issue was first raised by objections to the report of the master who found that Volland entered into the contract with complainant. While the master made no further specific finding on that subject, he overruled the objections and his report was approved and confirmed by the trial court.

At the time the contract was entered into complainant was an Illinois corporation, with its main office in the city of Chicago. There was a New York corporation of the same name affiliated with, but entirely separate from, complainant, although they had the same president and secretary. The New York corporation's factory and main office were at Lyndhurst, New Jersey. Complainant had an office there. The respective affairs and business of the two corporations were kept segregated. Edwin J. Ward, the secretary, lived in Chicago and had charge of complainant's business in the Chicago territory. In December, 1929, he called on Volland and requested an opportunity to figure the cork insulation work for the ice plant. Volland advised him that the plans and specifications had not been completed but as soon as they were, Ward would get an inquiry direct from Volland's engineers, George B. Bright Company of Detroit, Michigan. Complainant later received such an inquiry. George E. Carll, complainant's sales engineer, made an estimate on the work and prepared a proposal which was submitted to Volland and accepted by him April 12, 1930, after its approval by his engineers. On the same day the engineers gave complainant a written order for the work and material, confirming a previous verbal order.

Both corporations transacted business out of the Chicago office. Each had printed blank forms of proposals for contracts. The proposal submitted to Volland was made on one of the forms of the New York corporation. It was headed:

"CHICAGO OFFICE, January 22nd, 1930
"PROPOSAL
UNITED CORK COMPANIES, OF NEW YORK
Factory and Main Office
Lyndhurst, N. J.

"Subject ICE STORAGE AND ICE TANK
"To: The Chicago Lawn Pure Ice Co.,
Chicago, Illinois."

After setting out the terms, it concludes:

"This proposal * * * does not constitute a contract until approved by a duly authorized officer of the United Cork Companies at its main office at Lyndhurst, New Jersey.

Respectfully submitted,
UNITED CORK COMPANIES
By George E. Carll

Approved Lyndhurst, N. J., April 12, 1930.
UNITED CORK COMPANIES
By Edwin J. Ward, Sec'y
Accepted April 12, 1930.
CHICAGO LAWN PURE ICE COMPANY
By Charles A. Volland, Pres."

Under date of April 25, 1930, the New York corporation executed an instrument reciting that for the consideration of one dollar it assigned to complainant all of its rights, powers, privileges and interest in the contract, and that "Said contract being a contract of United Cork Companies, an Illinois corporation, and not a contract of United Cork Companies, a New York corporation, though entered into on the blank forms of proposals usually used by the United Cork Companies, a New York corporation." The instrument further recited that the assignment was intended to carry with it the right of said United Cork Companies, an Illinois corporation, to perform said contract and to collect the amounts due, and to become due, thereunder, as fully, and to all intents and purposes, as if the said pro-

posal dated January 22, 1930, above referred to, had not been made on the blank form of proposal used by this corporation.

Work under the contract was begun by the Illinois corporation about April 20, 1930, and completed by it July 8, following. Carll, who submitted the proposal, was not in the employ of, and had no connection with, the New York corporation. Ward, secretary of each corporation, testified that the only reason the proposal signed by Carll was on a blank form of the New York corporation was because of a custom to use the New York form on inquiries from out of the State; that he solicited and accepted the contract as an officer of the Illinois corporation; that the Illinois corporation did the work and received all the payments under the contract, and that the New York corporation had nothing to do with the work except that it furnished the material to the Illinois corporation. On cross-examination he testified that the proposal showed it was from the United Cork Companies of New York and that it must be authorized by the United Cork Companies at its main office in Lyndhurst, New Jersey; that the contract was sent to the office of the United Cork Companies at Lyndhurst, New Jersey, for approval and was approved by him there; that the proposal, complainant's exhibit 1, was accepted by the United Cork Companies of New York, and that the United Cork Companies of Illinois executed the contract for the United Cork Companies of New York. He was then asked: "Well this one was executed in Lyndhurst, New Jersey?" A. "I am talking about the actual work, not the execution of it." Q. "You mean the Illinois corporation does the work?" A. "Does the work—that is right." Q. "But the United Cork Companies of New York have the contracts?" A. "Yes sir, that's right." On further cross-examination, he testified that he would stand by his former testimony. On re-direct examination, he testified that the work was done on behalf of the Illinois corporation, and that when

he said it was done for the New York corporation he did not have enough legal knowledge to know for whom the work was done and did not think he was competent to answer. He reiterated his testimony that the New York corporation had no interest in the contract and never made any claim thereunder. A cursory reading of excerpts from his cross-examination, without a consideration of his whole testimony, might indicate the contract was entered into by the New York corporation but, when analyzed, it is apparent that he thought he was testifying merely to the contents of the printed proposal. His testimony, on the whole, can not be said to show that the contract was, in fact, a contract of the New York corporation. On the contrary, it shows that the Illinois corporation and Volland were the parties to the contract and the New York corporation had no interest in it, except that it furnished the material to complainant. This is further borne out by the instrument which appellees claim is an assignment of the New York corporation's interest in the contract. The instrument expressly disclaims that the New York corporation ever had any interest in the contract and shows, as a reason for its execution, the fact that the proposal happened to have been made on one of its forms. It is a disclaimer rather than an assignment. More than that, both parties to the contract treated it as one with the Illinois corporation. Our conclusion is that the chancellor correctly held that complainant was one of the contracting parties and was entitled to a lien for the unpaid balance under its contract.

The claim for lien of Carl Westberg and Company was filed February 25, 1931, and later the intervening petition was filed. Both allege all work, including extras, was completed December 1, 1930. The testimony shows that most of the work was completed by July 1, 1930, including extras. Westberg testified that on December 31, 1930, a load of cinders was furnished and graded and some pointing-up of the brick work was done. The foreman's daily time re-

port shows this work was performed at that time. But Volland and Al Weiss, who was in his employ, denied that any such work was performed in December. Appellees contend that the work was not in fact done, and that the claim was trumped up to toll the Statute of Limitations. We have examined the testimony and our conclusion is that the chancellor was justified in finding that the extra work was done in December and that therefore the claim for lien was filed within the statutory period.

The evidence shows that on April 6, 1931, Westberg's employees finished the sidewalk in front of the building in about six hours. This was a part of the work required under the original contract. Westberg testified that all of the work was not completed within the time specified in the contract because Volland failed to procure from the city the proper permit for the erection of an ice-storage plant. The extras furnished under the contract were completed by July 1 and a bill for such extras was rendered and payment asked. Appellees claim that the bill so rendered was for the completed work, but the letter asking for payment shows that it was on account of the extras, only.

The ground of variance claimed, and for which the Appellate Court reversed the decree, is that the claim for lien and the intervening petition allege the date of completion as December 31, 1930, when in fact the contract was not completed until April 6, 1931. It is apparent that the work done in April, 1931, could not be included in a claim for lien filed the previous February and that Westberg's contract could not have been completed until the sidewalk was finished in April.

Appellees invoke the doctrine announced in *Schmidt* v. *Anderson*, 253 Ill. 29, that, as mechanics' liens were not recognized at common law or in equity, but exist only by virtue of statutes creating them and providing for their enforcement, such statutes must be strictly construed with reference to those requirements upon which the right de-

pends. Other cases to the same effect are cited, but it is impractical to review them in detail. It is sufficient to notice that the strict construction of the statute was applied in each of them because a material requirement of the statute had been omitted. The doctrine of strict construction was never meant to be applied as a pitfall to the unwary, in good faith pursuing the path marked by the statute, nor as an ambuscade from which an adversary can overwhelm him for an immaterial misstep. Its function is to preserve the substantial rights of those against whom the remedy offered by the statute is directed, and it is never employed otherwise. In this connection it is important to notice some of the provisions of the statute providing for mechanics' liens and the method of their enforcement. Section 7 provides that the claim for lien may be filed at any time after the contract is made; that, as to the owner, it must be filed within two years, and as to creditors, incumbrancers or purchasers, within four months, after completion of the contract or the furnishing of additional work or material. No such lien shall be defeated to the proper amount thereof because of an error or overcharge not made with intent to defraud. Section 9 provides that the complainant and all defendants may contest each other's rights without any formal issue of record other than that upon the original bill, as well with respect to the amount due as to the right to the benefit of the lien claimed.

These provisions of the statute disclose a manifest legislative intent to remove, as far as practicable, technical requirements as a material element of the right to enforce a valid lien, and to clarify questions touching the materiality of the steps prescribed by the statute. A salient provision is that no lien shall be defeated because of unintentional error. If the erroneous allegation of completion in the claim for lien filed in February, 1931, had falsely tended to toll the statute, a substantial right of defendants would have been affected, but it is apparent that the error could

not toll the statute as to the work done in April following. The claim filed could not embrace work done on a later date. The intervenor had a lien from the date of his contract. It could be defeated only by a failure to file notice thereof within four months after final completion of the work. (*Pittsburgh Plate Glass Co.* v. *Kransz,* 291 Ill. 84.) By the statute the claim could be filed at any time after the making of the contract, within the limitation, and was so filed. No charge was attempted to be made for the work performed in April, and no substantial right of the defendants was affected by the error.

It is to be remembered that a variance between allegations and proof, in order to be fatal, must be substantial and material. We have repeatedly applied this rule both at law and in equity. (*Street* v. *Thompson,* 229 Ill. 613; *Hills* v. *McMunn,* 232 id. 488; *Mills* v. *Larrance,* 217 id. 446; *Toledo, Wabash and Western Railway Co.* v. *Thompson,* 71 id. 434.) The reason for the rule that allegations and proof must correspond is, that the defendant may not be subjected to another action and recovery for the same cause. (*Wheeler* v. *Reed,* 36 Ill. 81.) It is clear that the decree in this case would be a bar to any other claim by the intervenor under its contract. Defendants were in nowise prejudiced by the variance and it cannot be said that it was substantial or material. Courts of equity will not lend their aid to defeat just claims by a strained construction of the law, and where a variance is immaterial it will not be held fatal to a recovery.

Defendants claim that the intervenor cannot recover because no architect's certificate was issued as provided by the contract. The contract does not make such a certificate a prerequisite of the right to receive payment. Moreover, the work was completed and accepted by Volland. The contention is without merit.

It is not disputed that complainant and the intervenor performed their work in accordance with their contracts,

574

nor is the amount due and unpaid to each of them denied. They are entitled to be paid. Volland is a bankrupt and to deprive them of their liens would destroy their only chance of payment and permit Lang and Vogt, purchasers of the equity of redemption for a nominal sum, to profit, although they purchased with notice of the prior unpaid liens.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court affirmed.*