BANK OF BELLEVILLE *et al.*, Plaintiffs-Appellees, *v.* BELINDA STIDIMIRE *et al.*, Defendants-Appellants.

Fifth District   No. 82—696

Opinion filed October 20, 1983.

Thomas E. Kennedy III, of Land of Lincoln Legal Assistance Foundation, Inc., of East St. Louis, and Joel D. Brett, law student, for appellants.

Harry J. Sterling, P.C., of Fairview Heights, for appellees.

JUSTICE KASSERMAN delivered the opinion of the court:

This is a consolidated forcible entry and detainer action against defendants, Belinda Stidimire and Johnnie Mae Yarbrough, who were tenants of Avalon Mobile Court in East St. Louis. After a consolidated

bench trial, the circuit court of St. Clair County entered judgment for plaintiff for possession and attorney fees. Stidimire and Yarbrough appeal.

Each complaint sought possession and a judgment for back rent. Each was filed together with a copy of a "Notice to Vacate," indicating that the originals had been delivered to the respective defendants. Each "Notice" states that the tenant has five days to vacate the premises. Neither notice specifies any reason for the demand to vacate, and neither alleges any sum of money to be due and owing. Each defendant moved to dismiss the cause on the grounds, *inter alia,* that said notice was insufficient for failure to state that the respective tenant could avoid termination of the lease by paying the rent due. In a written order, the trial court found the notices "sufficient for possession—not rent."

Each defendant filed an "Answer, Affirmative Defense, Counterclaim." Each "Affirmative Defense" alleged that the respective mobile home had certain significant defects, that the respective defendant had notified plaintiff and its agents of these defects, and that the requested repairs had not been made. Each defendant alleged that the defects reduced the rental value of the respective premises to approximately zero and that plaintiff's complaint should therefore be dismissed. As to the Stidimire trailer, the defects alleged were as follows: the exterior door has no lock; the front stairs are unstable and dangerous; the toilet must be filled manually; the kitchen floor is caving in; the trailer is not tied down; the bottom of the trailer is not skirted; and the windows will not open. Yarbrough alleged the following defects: the windows and doors leak; the stairs are unstable and dangerous; the fuse box is exposed and malfunctioning; the exterior sewer line is broken and leaking; electrical sockets are uncovered; the trailer is not tied down; the bottom is not skirted; and the owners terminated gas service on July 6, 1982. By way of counterclaim, each defendant sought damages for reduced value of the respective premises in the amount of all rent actually paid since the period of the lease began. Each defendant also sought to have plaintiff ordered to repair the alleged defects.

Exhibits in evidence at the August 9, 1982, joint trial included the Stidimire and Yarbrough leases. Paragraph 13 of each of the four-page leases states:

> "The Tenant has inspected the home, its furniture and furnishings and accept [*sic*] it in good condition. If the Tenant shall find anything not in acceptable condition \*\*\*, a written statement of any objections must be delivered to the Owner within 3 days after taking possession; otherwise it will be conclusively

presumed that the home, the furniture and furnishings are in acceptable condition ***.''

Witnesses at trial included: Leona Agers, manager of Avalon Mobile Court; Ernest Shaefer, a Washington Park building inspector; and defendants.

Agers testified that neither defendant's trailer was tied down or skirted; that she had not been inside either trailer; and that both defendants complained continually about conditions. According to Agers, Yarbrough had complained to her about the front door leaking, the storm door being off, and the air conditioner not working; but she stated that she knew of no problem with Yarbrough's sewer line, fuse box, or front steps. Agers testified that Yarbrough had stated that no rent would be paid until the door was fixed. Agers further testified that Stidimire's steps might have holes and that Stidimire's weak kitchen floor was repaired prior to Stidimire's moving in. According to Agers, Stidimire's front door had locked when Stidimire moved in. Stidimire had complained about the steps but not about her toilet.

Asked whether she had notified anybody at Avalon in writing within three days after moving in regarding the defects in the trailer, Stidimire testified that she had not done so but that she had complained in person. Stidimire testified that the front door had never locked; that both she and her son had been injured by the hole in the front stairs; that the toilet would not flush unless a bucket of water was poured into it; and that most of the windows had no cranks with which to open them and those which did open would not close tightly. According to Stidimire, the stairs, door, and toilet were all in the same condition as when she moved in. The weak kitchen floor, however, had not been immediately apparent as it was covered by carpet. According to Stidimire, the trailer was unsafe, but she had moved in anyway "Because I didn't have nowhere to go and I thought she told me they were going to take care of the matter." She admitted telling Agers she would pay the rent when the trailer was repaired.

Yarbrough testified that she had been complaining about her trailer since she moved in. Specifically, she cited the following: water leaked in the front door; the storm door screen had been torn off by a storm; the wooden front stairs wobbled dangerously; the fuse box under the trailer was exposed and within reach of her children; the air conditioner would not run; the back door would not lock; there were two inoperative indoor electrical sockets; there were no storm windows in the front part of the trailer; and waste from the bathroom sewage pipe was leaking onto the ground. According to Yarbrough, when she had asked to talk to the owner, Agers had told her she had

to come to Agers. Yarbrough admitted not having complained of any of these defects in writing within three days of moving in. According to Yarbrough, the trailer was in the same condition as when she moved in.

Ernest Shaefer, the building inspector, testified that when he visited defendants' trailers near the end of June, the trailers were not tied down or skirted and he noted defects in windows, floors, doors, air conditioning, and front steps. He testified that the trailers were clean; however, in his opinion they should not be lived in. He testified that he would have condemned them if he could have but that he could not because they were being occupied.

By written order filed August 13, 1982, the trial court found plaintiff entitled to possession of both trailers, as well as costs of suit and attorney fees; the court found for plaintiff on defendants' counterclaims. The order criticized all of the parties, plaintiff for the condition of the trailers and defendants for accepting the premises as is with full knowledge of their condition and then withholding the rent. By written order filed October 25, 1982, the trial court denied post-trial motions by defendants. The court observed that defendants were aware of the condition of the premises upon taking possession and were aware of the terms of the lease but failed to take the appropriate steps under the lease "and would now seek to profit by their own defaults." The court also held defendants estopped to assert plaintiff's alleged breach of the implied warranty of habitability but stated that "[a]bsent the aforesaid knowledge of defendants the court would find otherwise."

Defendants first contend that the trial court should have dismissed plaintiff's complaint because the respective notices to vacate failed to comply with section 22 of the Mobile Home Landlord and Tenant Act (Ill. Rev. Stat. 1981, ch. 80, par. 222). We agree and reverse.

█ █ Statutes in derogation of the common law are strictly construed, and a party seeking a remedy thereunder must comply with the requirements of the statute, especially with respect to jurisdiction. (*Avdich v. Kleinert* (1977), 69 Ill. 2d 1, 6, 370 N.E.2d 504, 507.) The doctrine of strict construction is applied to preserve the rights of those against whom the statutory remedy is directed, not as a pitfall against those who in good faith pursue the statutory course. (*United Cork Cos. v. Volland* (1937), 365 Ill. 564, 572, 7 N.E.2d 301, 305.) The Mobile Home Landlord and Tenant Act is of relatively recent origin. The parties have cited no authority directly pertinent to the issue of what is a sufficient notice under section 22 of that act, and we are aware of none. However, defendants have cited an opinion construing nearly identical language in a statute addressing a similar topic.

In *Westerman v. Gilmore* (1958), 17 Ill. App. 2d 455, 150 N.E.2d 660, the court held a notice to terminate a lease to be insufficient under section 8 of "[A]n Act to revise the law in relation to landlord and tenant." (Ill. Rev. Stat. 1955, ch. 80, par. 8.) Section 8 provided as follows:

> "That a landlord or his agent may, any time after rent is due, demand payment thereof and notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, not less than five days after service thereof, the lease will be terminated."

Section 8 further provided that if the tenant shall not, within the time mentioned in such notice, pay the rent due, the landlord may consider the lease ended and sue for possession or maintain ejectment and claim for rent without further notice or demand.

Section 222 of the Mobile Home Landlord and Tenant Act (Ill. Rev. Stat. 1981, ch. 80, par. 222) provides in pertinent part:

> "A park owner may, any time rent is overdue, notify the tenant in writing that unless payment is made within the time specified in the notice, not less than 5 days after receipt thereof, the lease will be terminated."

Section 222 further provides that if the tenant remains in default, the park owner may institute an action for possession, rent due and any damages.

In *Westerman v. Gilmore,* the notice given was in pertinent part as follows:

> " 'The undersigned landlords hereby notify you and each of you as Tenants that they have, because of default in the payment of rent, elected to determine your lease bearing date, to-wit: the 11th day of May, A.D. 1954, and tenancy of the premises occupied by you and each of you and more particularly described as follows, to-wit:
>
> (description omitted)
>
> You and each of you above named are hereby notified to vacate the said premises on or prior to November 1, 1956.' " (17 Ill. App. 2d 455, 457-58, 150 N.E.2d 660, 661.)

The court in *Westerman v. Gilmore* found this notice to be insufficient as to section 8 because the notice required under section 8 "must include a demand for payment of rent within a certain time." 17 Ill. App. 2d 455, 459, 150 N.E.2d 660, 662.

■ ■ While the statutory provision in the case at bar is not the same, the requirements of both sections are identical—the tenant must be given an opportunity to pay the delinquent rent before the lease

may be terminated. We find the rationale of *Westerman v. Gilmore* to be persuasive and conclude that the instant notices were fatally defective for failure to inform the tenants that their leases would be terminated unless delinquent rental charges were paid. Accordingly, plaintiff's complaints should have been dismissed.

Plaintiff concedes that the instant notices are "inartfully drawn" but argues that defendants admitted that they owed rent and that it was "obvious" that defendants would not have paid their rent even if given a five-day notice to do so. This contention ignores the plain language of the statute, *i.e.*, that the park owner must give notice that the lease "will be terminated" unless overdue rent is paid on a specific date, not less than five days after receipt of such notice.

Defendants also appeal from the denial of their counterclaims in which each sought: (1) judgment in an amount equal to all rent and security deposits already paid to plaintiff and (2) an injunction requiring plaintiff to make "the necessary repairs" to the mobile homes in question. Plaintiff has never, so far as our examination of the record and briefs reveals, argued that the substantial defects alleged by defendants do not exist. Instead, plaintiff asserts that some or all of the defects were caused or permitted by defendants. We find no evidence of record to support that view. In this regard, the manager of the mobile court, Leona Agers, testified that she had not been inside either trailer. Accordingly, the trial court should not have denied the counterclaims which sought damages in the nature of a set-off against sums already paid by defendants to plaintiff. Parenthetically, we note that no question is presented in this appeal regarding unpaid rent alleged to be owed by defendants to plaintiff, or any possible set-off therefrom, because the judgment of the trial court was that plaintiff was entitled to possession and attorney fees and costs only; plaintiff has not appealed the judgment of the trial court refusing to award damages for unpaid rent.

Accordingly, we remand this cause so that the trial court may determine the amount of set-off defendants are entitled to, if any, against the sums defendants have already paid to plaintiff as of the filing of plaintiff's complaints.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

HARRISON, P.J., and WELCH, J., concur.