D. M. FOLEY COMPANY, INC., Plaintiff-Appellant, *v.* NORTH WEST FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee.

First District (5th Division)   No. 83—53

Opinion filed March 2, 1984.

Robert G. Peterson & Associates, of Chicago (Robert G. Peterson and Michael R. Alberts, of counsel), for appellant.

Gomberg & Sharfman, Ltd., of Chicago (Lawrence A. Gold, David L. Gomberg, and Robert J. Sharfman, of counsel), for appellee.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Plaintiff-intervenor, D. M. Foley Company, Inc. (plaintiff), appeals from an order of the circuit court which granted defendant North West Federal Savings and Loan Association's motion for summary judgment. Plaintiff contends that the trial court erred in determining that it failed to file its claim for a mechanic's lien within four months of completing the work under a landscaping contract. Plaintiff also asserts that even if it failed to file its claim for lien within four months of completing the work under the contract, it nonetheless has valid lien rights against defendant because defendant had actual or constructive notice of the claim for lien before acquiring an interest in the property. For the reasons which follow, we affirm.

The various documents filed in the trial court indicate that defendant is mortgagee of the subject property pursuant to three mortgages recorded on March 9, 1976, November 1, 1978, and August 1, 1979, respectively. On September 9, 1980, plaintiff entered in to a written contract with Ballantrae Development, Inc. (Ballantrae), by which it agreed to provide landscaping services, including labor and materials, for the mortgaged land. The contract provided that plaintiff "guarantees all materials and workmanship specified for a period of 12 Months unless neglected by the Purchaser." Incorporated into the contract was a "Scope of Work" list. Several photocopies of this list appear in the record, but these are largely illegible. Plaintiff admitted, however, in answering defendant's interrogatories that all of the items on the scope of work list were delivered and completed on or about December 14, 1980. The complaint alleged that the contract was completed on May 29, 1981, within four months of the filing of the claim for lien on July 2, 1981. It was also alleged that on December 14, 1980, plaintiff made written demand on Ballantrae for payment in full for labor and materials delivered to the real estate. On October 19, 1982, defendant filed a motion for summary judgment, based on defendant's contention that the contract was fully performed more than four months before the filing of the lien claim. The affidavit of Joan Slezak accompanied the motion and stated that she had reviewed documents produced by plaintiff and that none of them supported the contention that plaintiff had performed work under the contract within four months of the filing of the claim for lien. Plaintiff's president, D. M. Foley, filed an affidavit in opposition to defendant's motion which stated that plaintiff, "under the terms of the contract ***

continued to perform maintenance-landscaping services at Ballantrae pursuant to the terms of the contract until May 29, 1981." A letter dated June 3, 1981, signed by D. M. Foley as plaintiff's president, and addressed to Ballantrae, was attached to the affidavit. The letter stated that plaintiff was terminating "our guarantee" based on Ballantrae's failure to pay invoices and to maintain the materials installed by plaintiff.

On December 15, 1982, the trial court granted defendant's motion for summary judgment and dismissed the complaint. Plaintiff appeals from that order.

OPINION

■ Plaintiff's first contention on appeal is that the trial court erred in determining that plaintiff had failed to file its claim for lien within four months of completing work under the contract. Section 7 of the Mechanics' Liens Act provides that:

"No contractor shall be allowed to enforce such lien against or to the prejudice of any other creditor or incumbrancer or purchaser, unless within 4 months after completion, or if extra or additional work is done or material is delivered therefor within 4 months after the completion of such extra or additional work or the final delivery of such extra or additional material, he or she shall either bring an action to enforce his or her lien therefor or shall file in the office of the recorder of deeds of the county in which the building, erection or other improvement to be charged with the lien is situated, a claim for lien ***." (Ill. Rev. Stat. 1981, ch. 82, par. 7.)

Plaintiff's argument assumes that the four-month period provided by the statute begins upon completion of the contract, and further that the maintenance work allegedly performed under the contract after December 14, 1980, was sufficient to bring all of the work performed under the contract within the four-month period. "However, 'completion' as used in section 7 does not refer to completion of the contract. It means completion of the work for which a contractor seeks to enforce his lien. (*W.G. Wood Co. v. Nyeswander* (1914), 187 Ill. App. 354.)" (*Dougherty-Janssen Co. v. Danage Enterprises, Inc.* (1980), 80 Ill. App. 3d 1112, 1116, 400 N.E.2d 1023.) In the instant case there is no dispute that all of the items on the scope of work list in the contract were delivered and installed and payment demanded on or about December 14, 1980. This work was thus "completed" on that date within the meaning of the statute. Accordingly, the claim for lien or suit to enforce the lien should have been

brought within four months of December 14, 1980, in order to have been timely. Because there is no genuine dispute that the claim for lien was not filed until July 2, 1981, the lien for the work performed and materials furnished on or before December 14, 1980, was not preserved. The trial court therefore properly granted summary judgment as to this issue. See generally Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c); *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497.

■ Plaintiff's next argument, liberally construed, is that it is entitled to a lien for the work allegedly performed after December 14, 1980, which consisted of "[m]aintenance landscaping services," according to plaintiff's answer to defendant's interrogatory. Defendant has not questioned the timeliness of the filing of the claim for lien with regard to these services. Nonetheless, an examination of the basis for the claim of lien is appropriate because we may affirm the trial court when justified in law for any reason. (*Ozment v. Lance* (1982), 107 Ill. App. 3d 348, 350, 437 N.E.2d 930.) In our view, whether plaintiff may be entitled to a lien for the value of this work depends on whether the "maintenance" services which he assertedly performed qualify as "landscape work" within the meaning of section 1 of the Mechanics' Liens Act. This statute provides in pertinent part that "[a]ny person who shall by any contract *** with the owner of a lot or tract of land, or with one whom the owner has authorized or knowingly permitted to contract, to improve the lot or tract of land, furnish material, fixtures, apparatus or machinery, forms or form work ***; or fill, sod, or excavate such lot or tract of land, or do landscape work thereon or therefor; *** has a lien upon the whole of such lot or tract of land ***." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 82, par. 1.

The phrase "landscape work" does not appear to be susceptible of precise definition and construction is necessary to determine whether "maintenance landscaping services" are within the statute. In construing a statute, the primary inquiry is to ascertain the legislature's intention not only from the language which it has used, but also from the reason and necessity for the act, the evils sought to be remedied, and the objects and purposes sought to be obtained. *Lincoln National Life Insurance Co. v. McCarthy* (1957), 10 Ill. 2d 489, 494, 140 N.E.2d 687.

Generally, the basis for a mechanic's lien is the performance of work or the furnishing of materials in the construction upon or improvement of land and which constitutes an enhancement of the value of the land. (See generally *Robinette v. Servite Fathers* (1977),

49 Ill. App. 3d 585, 587, 364 N.E.2d 679; see also *Verplank Concrete & Supply, Inc. v. Marsh* (1976), 40 Ill. App. 3d 742, 744, 353 N.E.2d 27.) In *Robinette*, the court construed the 1973 version of section 1 to exclude the removal of a house from land on the ground that such removal did not improve the land. Although this specific holding was legislatively overruled as of July 1, 1980, by Public Act 81—1185 (see Ill. Ann. Stat., ch. 82, par. 1 (Smith-Hurd Supp. 1982)), the legislature was merely substituting its conclusion that the removal of such a structure enhanced the value of the subject property, rather than attempting to effect a change in analysis. Thus, the focus of inquiry remains whether the work performed has enhanced the value of the land to be charged with the lien. (See *Verplank Concrete & Supply, Inc. v. Marsh* (1976), 40 Ill. App. 3d 742, 744, 353 N.E.2d 27; *Robb v. Lindquist* (1974), 23 Ill. App. 3d 186, 189, 318 N.E.2d 301; see also *Bull v. Mitchell* (1983), 114 Ill. App. 3d 177, 184, 448 N.E.2d 1016 (construing section 37 of the Mechanics' Liens Act, relating to liens on watercraft).) Although it is not necessary that the materials furnished enhance the value of the premises where the action is between the lienor and the owner (*Ripperden v. Henry Absher Chevrolet, Inc.* (1971), 1 Ill. App. 3d 712, 714, 274 N.E.2d 113), this exception is inapplicable by its terms to the instant controversy between the putative lienor and the defendant as the then mortgagee. The apparent rationale for this rule is that a lien which is not based on enhancement of the property's worth creates a potential for fraud against the mortgagee's interests (compare *Edward Hines Lumber Co. v. Dell Corp.* (1977), 49 Ill. App. 3d 873, 882, 364 N.E.2d 368 (amount of lien not limited by original contract price where such price was unreasonably low and therefore in violation of rights and interests of subcontractors)). This same potential for fraud exists where a lien is claimed for landscaping services which have not added anything tangible to the property. Thus, although not specifically stated in the statute, we believe that the proper construction of the phrase "landscape work" requires a showing of enhancement of the subject property.

The initial planting of trees or shrubbery on property constitutes an obvious enhancement of the land. In the instant case, however, it is undisputed that no materials were installed on the property after December 14, 1980. The question before us thus becomes whether the "maintenance" landscaping performed in the instant case qualifies as an enhancement which might support a lien. Although the courts of this State have not had occasion to address this question, the California Court of Appeals has held that "maintenance" land-

scaping can support a mechanic's lien in some circumstances. (*Howard A. Deason & Co. v. Costa Tierra Ltd.* (1969), 2 Cal. App. 3d 742, 753, 83 Cal. Rptr. 105, 113.) That court distinguished between the care necessary to insure the proper settlement in the ground of planted materials (which would constitute an improvement for which a lien could be had) and mere mowing and watering, which would be insufficient to support a lien. (2 Cal. App. 3d 742, 753, 83 Cal. Rptr. 105, 113; *cf. P.H. Broughton & Sons, Inc. v. Muller & Allen Realty Co.* (1976), 40 Ill. App. 3d 776, 353 N.E.2d 30 (correction or maintenance of work already done does not extend time to file claim for lien).) We think this distinction accords with the intent of our legislature in enacting our own statute as indicated by the rationale requiring enhancement, and we will so construe the statute.

■ This does not resolve the precise question before us, however, which is whether the trial court properly granted summary judgment to defendant on this issue. Plaintiff's written response to the motion for summary judgment described the contract with Ballantrae as involving:

> "planting trees, grass and other foliage at the Ballantrae project. In addition, once the trees and foliage were *fully placed* at the project, Foley had a continuing obligation to provide maintenance services at the project for a period of time. In this particular case, *Foley completed the original placement of the trees and shrubs on or before December 14, 1980* and the entire balance under the contract became due at this time. Foley then continued to provide maintenance services at the Ballantrae project until May 29, 1981 pursuant to the provisions of the contract." (Emphasis added.)

Thus, the materials had been "fully placed" at the project by December 14, 1980. There is nothing in the record which suggests that Foley enhanced the property in any way after this date. This conclusion is bolstered by the letter from D. M. Foley to Ballantrae stating that because of the failure to maintain the materials implanted by plaintiff, the latter was terminating its "guarantee." This indicates that the "maintenance" services were not intended to aid in the initial settlement of materials in the ground, but were designed instead as subsequent measures necessary to maintain the vitality of the living materials. Mere replacement of once-viable material does not enhance the property, as is required by the statute. We conclude, therefore, that there was no genuine issue of material fact before the trial court sufficient to preclude entry of summary judgment.

■ Plaintiff next contends that it has valid lien rights against

defendant because defendant had notice of plaintiff's claim prior to defendant's acquisition of its ownership interest in the property.[1] Plaintiff cites this court's decision in *Mutschler Kitchens of Chicago, Inc. v. Wineman* (1981), 95 Ill. App. 3d 728, 420 N.E.2d 672, for the proposition that the four-month limit imposed by section 7 of the Mechanics' Liens Act (Ill. Rev. Stat. 1981, ch. 82, par. 7) is inapplicable where a subsequent purchaser has notice of a pending suit to forclose a lien and whose interests, therefore, are not prejudiced by the failure to comply with the filing deadline. *Mutschler*, however, does not so hold. In that case, the trial court had granted a motion to dismiss one set of defendants on the ground that they were subsequent purchasers within the meaning of section 7 and that the putative lienor was therefore required to file its claim for lien within the four-month period, which it had failed to do. The appellate court held that the trial court had insufficient information before it to determine, on a motion to dismiss, whether those defendants qualified as subsequent purchasers. The court concluded that, for purposes of the motion to dismiss, the defendants had failed to show that they met the requirements of section 7 and, accordingly, they could not invoke the four-month filing requirement as the basis for the motion to dismiss. (See *Waldbillig Woodworking, Inc. v. King Arthur's North, Ltd.* (1982), 104 Ill. App. 3d 417, 419-20, 432 N.E.2d 1048.) Moreover, as the court in *Waldbillig* indicated, a lien filed after the four-month period cannot be valid even against those who purchase an interest in the property after the filing of the lien (and who therefore have notice of the lien) because the four-month period is "not merely a statute of limitations *** [but] a condition of liability itself and not just a limitation on the remedy. [Citation.] It follows that the potential liability of subsequent purchasers perished inchoate four months after plaintiffs completed the work." (104 Ill. App. 3d 417, 420, 432 N.E.2d 1048.) Accordingly, we must reject plaintiff's contention in the instant case.

The order of the trial court granting summary judgment in favor of defendant is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.

---

[1]Plaintiff's brief asserts that "[s]ubsequently, when Ballantrae defaulted on construction loans and after the plaintiff filed its lien, the defendant succeeded to an ownership interest in the property in question." However, as defendant points out, the record is devoid of evidence capable of supporting this claim.