BRAUN-SKIBA, LTD., Intervenor Plaintiff-Appellant and Counterdefendant-Appellant, v. LA SALLE NATIONAL BANK, as Trustee Under Trust No. 100819, *et al.*, Defendants-Appellees (La Salle National Bank, as Trustee Under Trust No. 114065, Counterplaintiff-Appellee).

First District (2nd Division)   No. 1—94—2107

Opinion filed April 30, 1996.

Schiff, Hardin & Waite, of Chicago (Michael L. Brody and Kevin L. Kolton, of counsel), for appellant.

Rosenthal & Schanfield, P.C., of Chicago (James M. Dash and Stephen P. Kikoler, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Braun-Skiba (plaintiff), an architectural firm, rendered services relating to property being developed by Wolf Point Development Corporation (Wolf Point). After Wolf Point failed to make its contractually scheduled payments, plaintiff filed lien number 89304682 (lien one) with the Cook County recorder of deeds on July 5, 1989. At the time lien one was filed, La Salle National Bank trust number 100819 held title to the property. Lien one gave March 7, 1987, as the last date plaintiff had performed any work. When plaintiff later discovered that the year 1987 was a typographical error, and that it should have been 1989, it caused lien number 89452897 (lien two) to be recorded on September 25, 1989. However, instead of simply changing the year from 1987 to 1989, plaintiff's lien two stated that the last work it performed was on June 9, 1989.

On January 31, 1990, plaintiff filed a petition to intervene in the instant case, which had been brought by other lien holders, in order to enforce its own lien[1] and to assert its priority over the others.[2] On April 1, 1990, before the circuit court ruled on plaintiff's petition to intervene, the property was deeded to La Salle National Bank trust number 114065 (defendant), and the transfer was recorded on April 17, 1990. Plaintiff's motion to intervene against trust number 100819 was granted August 16, 1990.

On December 16, 1991, plaintiff was permitted to add defendant as a party to this action. On March 9, 1992, the circuit court held that the lien was valid against trust number 100819. However, this ruling was obviously not very helpful to plaintiff since that trust was no longer the owner of the property for the reasons and authorities as discussed below.

At the trial held to enforce the lien against defendant, the only factual dispute was whether plaintiff performed work during the four-month period prior to the filing of its lien as required under sec-

---

[1]The parties dispute whether plaintiff sued to enforce lien one, lien two, or both liens. Henceforth, we shall refer to the lien sought to be enforced as neither the first nor the second.

[2]In its verified complaint, plaintiff gave March 9, 1989, as still a third date as the date of completion. Also, the original cause of action in which plaintiff intervened is not relevant to this appeal.

tion 7 of the Mechanics Lien Act (770 ILCS 60/7 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 82, par. 7). Leonard Skiba, a principal of plaintiff and its vice-president and secretary, testified that plaintiff's contract with Wolf Point was for architectural services to be rendered in connection with a $26 million construction project that was to take two years to complete for a fee of $650,000. He stated that the contract called for monthly bills that were based on the percentage of work completed and not on the number of hours worked. Payment of the $650,000 was divided into five phases of the work, and a percentage was assigned to each phase.

When Wolf Point did not pay the approximately $232,248.94 that was due prior to March 7, 1989, plaintiff prepared a lien. In attempting to explain the reason for the discrepancy in dates on the two liens, Skiba testified that the March 7 date was chosen for the first lien because it was a "milestone date in the project's approval" and that the lien was prepared in March, but was not filed until July 5, 1989. However, he continued, despite the fact that the first lien was filed in July, it did not include the additional work performed in June, when Wolf Point requested that plaintiff prepare drawings and a project model for a presentation to be made on the client's behalf. Although he testified that a letter to his client reflected that the presentation was held on June 6, 1989, during cross-examination he admitted that the letter actually discussed only whether plaintiff was going to be paid. He also admitted that he performed no work on June 9, 1989. Skiba also testified that the work performed in June was not reflected in the first lien because "the amount of work that was being done between that March date and the June date was not a significant amount relative to the scale of the contract *** for [$]650,000." Furthermore, he admitted that plaintiff's bills in March, April, May, and June each reflected that $232,248.94 was due, that none of that amount represented work performed after March, and that the amount was essentially for the same value (with an 81 cent difference) as the value of the unpaid work prior to March 7, 1989.[3]

Although the trial court did not permit plaintiff to admit into evidence the time sheets of its employee, Dave LaPlaca, Skiba testified that LaPlaca performed two hours of work in June preparing for the meeting with Skiba.

Sherwin Braun, former president of plaintiff, testified that he worked on the project between March 7, 1989, and June 9, 1989; more specifically, that he spent 1 1/2 hours in April performing

---

[3]In fact, plaintiff also did not bill Wolf Point for any work performed in March.

administrative tasks related to the project. Although his time sheets indicated that he worked three hours on the project during the week of May 26, 1989, Braun could not recall what he did, nor could he recall performing any work on June 9, 1989. Further, he admitted to signing a verified complaint stating that plaintiff ceased performing architectural services for Wolf Point on March 9, 1989.

Prior to the trial court's decision, but after the trial, plaintiff brought a motion to file a third amended complaint, which sought to reform the first lien to reflect June 9, 1989, as the date of completion of the work and also to enforce the first and second liens specifically. Defendant opposed the amendment, explaining that it would be prejudiced because plaintiff did not seek to have the first lien admitted into evidence and that it would have never been admitted *but for* the fact that defendant introduced it in its attempt to impeach plaintiff's witnesses. The trial court denied plaintiff's motion.

The trial court held that the first lien contained a typographical error and that it should have stated the date of completion of the work as March 7, 1989, instead of March 7, 1987. The judge further held that the lien that was perfected was that of September 25, 1989, the date the second lien was filed. Because the lien was perfected on September 25, 1989, and because section 7 of the Mechanics Lien Act (770 ILCS 60/7 (West 1992)) requires that the lien be filed within four months of the completion of the work, the last date that the work had to have been completed for a valid lien was May 25, 1989.

Accordingly, the trial court found that the lien perfected on September 25, 1989, was untimely because the date of completion of the work was March 7, 1989, despite the fact that plaintiff had alleged and testified that it performed work up until the week of June 9, 1989. The judge further held that the work that was performed subsequent to March 7, 1989, was not lienable because it was trivial and inconsequential; and that plaintiff's prior sworn statements in the first lien and the verified complaint which stated that the work was completed March 7, 1987, and March 9, 1989, respectively, were formal admissions of fact. The court based its decision on the evidence that plaintiff did not send any increased billing for services performed after March 1989; that the amounts claimed in the first and second liens were identical; and that the work performed during June related to plaintiff's effort to collect bills, a nonlienable service. The trial court concluded by holding that plaintiff "chose the June 9, 1989 date merely to revive its lien. [T]hus, [plaintiff] did not timely file its notice of mechanic's lien, and its lien is not enforceable against [defendant]." This appeal followed.

■ Plaintiff argues that since, in order to file a proper lien, it is

not required that it contain a completion date,[4] the trial court erred in finding that plaintiff's first lien was not perfected merely because the completion date was incorrect.[5]

Section 7 of the Mechanics Lien Act provides:

"No contractor shall be allowed to enforce such lien against or to the prejudice of any other creditor or incumbrancer or purchaser, unless within 4 months after completion, or if extra or additional work is done or material is delivered therefor within 4 months after the completion of such extra or additional work or the final delivery of such extra or additional material, he or she shall either bring an action to enforce his or her lien therefor or shall file in the office of the recorder of the county in which the building, erection or other improvement to be charged with the lien is situated, a claim for lien, verified by the affidavit of himself or herself, or his or her agent or employee, which shall consist of a brief statement of the contract, the balance due after allowing all credits, and a sufficiently correct description of the lot ***. Such claim for lien may be filed at any time after the contract is made, and as to the owner may be filed at any time after the contract is made, and within 2 years after the completion of the contract, or the completion of any extra work or the furnishing of any extra material thereunder, and as to such owner may be amended at any time before the final judgment." 770 ILCS 60/7 (West 1992).

In its order, the trial court found that plaintiff perfected its lien on September 25, 1989. The judge, citing *Mutual Services, Inc. v. Ballantrae Development Co.*, 159 Ill. App. 3d 549, 510 N.E.2d 1219 (1987), explained:

"Because [defendant] is not the original owner of the Property, but a subsequent purchaser under the Act, [plaintiff] was required to file its lien claim or complaint within the four month statutory

---

[4]According to this court, "[t]he filed lien must be verified and must include a brief statement of the contract, identify the balance due after allowing all credits and a sufficiently correct description of the lot, lots or tract of land to identify same." *Mutual Services, Inc. v. Ballantrae Development Co.*, 159 Ill. App. 3d 549, 553, 510 N.E.2d 1219 (1987), citing section 7 of the Mechanics Lien Act.

[5]Defendant argues that plaintiff is estopped from attempting to enforce the first lien claim, citing *Leigh v. National Hollow Brake-Beam Co.*, 224 Ill. 76, 79, 79 N.E. 318, 320 (1906), and *Stewart v. O'Bryan*, 50 Ill. App. 3d 108, 110, 365 N.E.2d 1019, 1021 (1977). However, since we hold, as we discuss below, that the first lien is invalid, it is not necessary to address defendant's estoppel argument.

time period in order to enforce its lien to the prejudice of [defendant]."

On its face, the first lien did not appear to have been filed within the period required by the Mechanics Lien Act; thus, it was invalid. 770 ILCS 60/7 (West 1992). The first lien stated that the day the work was completed occurred in 1987, over two years prior to the filing of the lien. Whether or not the date was correct, the lien did not serve its purpose of putting defendant on notice. *Mutual Services*, 159 Ill. App. 3d 549, 510 N.E.2d 1219.

We find *Mutual Services* to be on point. In that case, the plaintiff filed a lien on June 23, 1981, which stated that the work was completed on February 20, 1981. *Mutual Services*, 159 Ill. App. 3d at 551. As in the instant case, although the lien appeared to be invalid on its face, the plaintiff argued that it should be enforced because it misstated the required date on the lien and the actual date of completion was one within the mandatory filing period. *Mutual Services*, 159 Ill. App. 3d at 552. However, the appellate court held, the plaintiff's claim for a lien was "a clearly sworn statement which was signed"; accordingly, it was proper for the trial court to consider the date recorded as a binding factual allegation because "prior inconsistent sworn statement[s] are a party's formal binding admissions of fact." *Mutual Services*, 159 Ill. App. 3d at 553, citing *Premier Electrical Construction Co. v. La Salle National Bank*, 132 Ill. App. 3d 485, 494, 477 N.E.2d 1249 (1984). Consequently, the incorrect date on the lien served as the plaintiff's formal binding admission of fact. *Mutual Services*, 159 Ill. App. 3d at 553.

Further, the lien in *Mutual Services*, as in the instant case, was unenforceable against third parties because it failed to give them notice of the "existence, nature and character of a lien and thus enable third parties to determine from the claim itself whether the lien is enforceable." *Mutual Services*, 159 Ill. App. 3d at 553, citing *Federal Savings & Loan Insurance Corp. v. American National Bank & Trust Co.*, 115 Ill. App. 3d 426, 429, 450 N.E.2d 820 (1983).[6]

Although plaintiff correctly asserts that *United Cork Cos. v. Vol-*

---

[6]Plaintiff cites *Inter-State Building & Loan Ass'n v. Ayers*, 177 Ill. 9, 25, 52 N.E. 342 (1898), and *Lyons Federal Trust & Savings Bank v. Moline National Bank*, 193 Ill. App. 3d 108, 549 N.E.2d 933 (1990), for the general proposition that errors in the lien should not be construed to invalidate the lien. However, in contrast to *Mutual Services*, *Interstate* and *Lyons* do not specifically address an error on the completion date; therefore, *Mutual Services* is clearly more applicable. *Inter-State*, 177 Ill. 9, 52 N.E. 342 (finding that an undisclosed principal will not defeat the lien); *Lyons*, 193 Ill. App. 3d 108, 549 N.E.2d 933 (finding that an error in the contract date stated on a

*land*, 365 Ill. 564, 7 N.E.2d 301 (1937), holds that an error in the completion date does not invalidate a lien, the present case is clearly and easily distinguishable from it. In *United Cork*, the claimant filed its lien on February 25, 1931, which alleged that the contract was completed December 1, 1930. *United Cork*, 365 Ill. at 570. The supreme court held that the trial court was justified in finding that the work was completed in December and that, therefore, the lien was filed within the statutory period. *United Cork*, 365 Ill. at 571. The defendants in that case argued that the lien contained the improper completion date, because the contract was not completed until April 6, 1931. *United Cork*, 365 Ill. at 571. However, in holding that the lien was valid, the court explained that work performed in April could not possibly have been included in the February lien claim because the work was not yet performed. *United Cork*, 365 Ill. at 571, 573. Additionally, the court noted that the lien did not seek to charge for work completed in April. *United Cork*, 365 Ill. at 571, 573. When the court in *United Cork* held that an error in a completion date does not invalidate a lien, what it was actually saying was that timeliness of the lien does not hinge on when the contract was actually completed, but what really matters is that a lien is filed within four months of the completion of the work for which the lien holder is charging, as stated in the lien. See *D.M. Foley Co. v. North West Federal Savings & Loan Ass'n*, 122 Ill. App. 3d 411, 414, 461 N.E.2d 500 (1984) (finding that "completion" "means completion of the work for which a contractor seeks to enforce his lien"). What is also important in *United Cork* is that the lien was valid on its face and could properly serve as notice to third parties. In the present case, however, the lien is invalid on its face and, therefore, under the principles addressed in *Mutual Services*, it is not enforceable against defendant, a third party.[7] *Mutual Services*, 159 Ill. App. 3d 549, 510 N.E.2d 1219.

Plaintiff argues that despite the defects of the lien, defendant had actual notice of the debt when it purchased the property. Plaintiff, however, overlooks that the law in Illinois is that, regardless of actual notice, it was required to file with the recorder a proper

lien is not a binding judicial admission of fact because the contract date is not required and because the date upon which a contract is entered into is a mixed question of fact and law, not purely a statement of fact such as, for example, "when work commenced on a project").

[7]Plaintiff also urges that the first lien should be enforced because the typographical error is obvious on the face of the document. This argument is without merit because there is no indication in the document that 1987, in particular, is an obvious typographical error.

lien in order to enforce it. *Mutual Services*, 159 Ill. App. 3d 549, 510 N.E.2d 1219; *D.M. Foley*, 122 Ill. App. 3d 411, 461 N.E.2d 500. This is evidenced by the holding in *Mutual Services* where even though a notice of the lien was specifically sent to the defendant, well within the four-month filing date, this court found that the lien was unenforceable against the defendant. *Mutual Services*, 159 Ill. App. 3d at 551.

Further, in *D.M. Foley*, plaintiff's argument here was specifically rejected because, according to this court, whether a third party has actual or constructive notice:

> "the four-month period is 'not merely a statute of limitations *** [but] a condition of liability itself and not just a limitation on the remedy. [Citation.] It follows that the potential liability of subsequent purchasers perished inchoate four months after plaintiffs completed the work.' " *D.M. Foley*, 122 Ill. App. 3d at 418, quoting *Waldbilling Woodworking, Inc. v. King Arthur's North, Ltd.*, 104 Ill. App. 3d 417, 420, 432 N.E.2d 1048 (1982).

Thus, it is irrelevant that defendant had actual notice; the first lien is unenforceable against it because of its patent invalidity.

■ Regarding the second lien, plaintiff argues that the trial court erred in finding that it was unenforceable for not having been filed within four months after the work was completed. As stated earlier, the second lien was filed on September 25, 1989, and it alleged that the last date that work was performed on the project was June 9, 1989. Unlike the first lien, this one was valid on its face. However, the trial court found that the last date of work was actually March 7, 1989; consequently, the second lien was held to be unenforceable against defendant.

Although evidence was presented that plaintiff performed about eight hours of work in June 1989, the trial court found that this work was too trivial and too inconsequential to extend the time for the filing of a claim for a lien, citing *Miller Brothers Industrial Sheet Metal Corp. v. La Salle National Bank*, 119 Ill. App. 2d 23, 225 N.E.2d 755 (1970), and *D.M. Foley*, 122 Ill. App. 3d 411, 461 N.E.2d 500. Work that is trivial and insubstantial, and not "essential to the completion of the contract," does not extend the time to file a lien under the Mechanics Lien Act. *Miller Brothers*, 119 Ill. App. 2d at 29-30; *Du Page Bank & Trust Co. v. Du Page Bank & Trust Co.*, 122 Ill. App. 3d 1015, 1021, 462 N.E.2d 25 (1984) ("[S]ubstantial work done at the request or demand of the owner, without which the contract cannot be considered completed, will extend the date of completion").

The trial judge found that the weight of the evidence supported the conclusion that the work was actually completed March 7, 1989.

According to the court, plaintiff's "second lien was identical to the first, including the amount claimed and the description of the work done. The only change on the second lien claim was the date of completion." Additionally, plaintiff's testimony revealed that the second lien claim was for the same work as alleged in the first lien claim.

The fact finder, in this case, the trial judge, "is in a superior position to determine the credibility of the witnesses and the weight to be given their testimony," and we are not to substitute our judgment for that of the trial court unless we find that it is against the manifest weight of the evidence. *Arians v. Larkin Bank*, 253 Ill. App. 3d 1037, 1041, 625 N.E.2d 1101 (1993).

A review of the record supports the trial judge in his findings as not being against the manifest weight of the evidence. Although plaintiff's billing sheets and testimony reveal that about eight hours of work were performed after March 7, 1989, plaintiff's own witnesses, Leonard Skiba and Sherwin Braun, testified that the work was not significant.[8] Leonard Skiba testified that the value of the work completed by March 7, 1989, had the same value of the work which the second lien alleged was completed by June 9, 1989. Skiba admitted that he did not perform any work on June 9, 1989, and Braun could not recall if he performed any work on June 9, 1989.

We find it noteworthy that Skiba's credibility regarding what kind of work he performed in June was called into question when his testimony was found to be inconsistent with a letter he alleged would be corroborative of that testimony. Skiba testified that on June 6, 1989, a meeting was held at which plaintiff, at Wolf Point's request, gave a presentation which required the preparation of drawings and models of the project.[9] He claimed that he wrote a letter to Wolf Point about the meeting. As stated earlier, however, on cross-

---

[8]Plaintiff explained that it did not bill for additional hours performed in June because its billings were based on the percentage of work completed, and the work performed after March was not significant enough to change the percentage of work billed. However, these allegations also serve as admissions that the work performed after March was insignificant. Specifically, Skiba stated, "the amount of the work that was being done between that March date and the June date was not a significant amount relative to the scale of the contract *** for [$]650,000."

[9]Plaintiff alleges that the trial court erred in refusing to admit the time sheets of Dave LaPlaca (plaintiff's employee) pursuant to the business records exception to the hearsay rule; however, we conclude that plaintiff was not prejudiced thereby because the court permitted Skiba to testify that LaPlaca spent two hours preparing for the June 6 meeting.

examination, Skiba admitted that the letter actually related to whether plaintiff would get paid.

Thus, because plaintiff's own testimony revealed that the work performed after March 1989 was insubstantial and because plaintiff's witnesses' credibility was called into question, we do not discern any basis upon which we can hold that it was against the manifest weight of the evidence for the trial court to rule that the work performed subsequent to March 7, 1989, was trivial and insubstantial.

In *Miller*, the court found that maintenance performed on a completed job was not essential to the completion of the contract and that, therefore, such trivial and insubstantial work could not extend the filing time of a mechanics' lien. *Miller*, 119 Ill. App. 2d at 30. The *Miller* court also based its decision that the lien was untimely on evidence, as in the instant case, that the plaintiff billed its client for the same value of services charged prior to the date of completion alleged in the lien. *Miller*, 119 Ill. App. 2d at 29-30. Here, because the record reveals that the work performed subsequent to March 7, 1989, was not substantial, the trial court properly found that the completion date of the contract could not be extended beyond that date. Therefore, we are of the opinion that the trial court properly found that the second lien was untimely and unenforceable because it was not filed within four months of the completion date of the project.

■ Plaintiff alleges that the trial court erred in failing to grant its motion for leave to file its third amended complaint, which was proffered after proofs had been closed but prior to final judgment. The third amended complaint differed from the second amended complaint in that it sought to reform the March 7, 1987, date on the first lien to state March 7, 1989, as the date of completion, and also sought to specifically enforce the first and second liens, in contrast to the second amended complaint, which did not specify which lien it was seeking to enforce.

Defendant objected, arguing that granting leave to file the third amended complaint would have been prejudicial to it because, at trial, plaintiff did not seek either to enforce or to reform the first lien. Defendant objected also on the ground that plaintiff did not even seek to have the first lien admitted into evidence, pointing out that the defendant had it admitted in order to impeach plaintiff's witnesses.

In Illinois, a party may be permitted to amend pleadings at anytime before judgment is rendered, provided there is no undue prejudice or hardship to the other party. 735 ILCS 5/2—616(c) (West 1992); *Ryan v. Mobil Oil Corp.*, 157 Ill. App. 3d 1069, 1074-75, 510 N.E.2d 1162 (1987). And "[i]t is well settled that the decision whether

to allow an amendment to a complaint lies within the sound discretion of the trial court, and its decision will not be disturbed absent a showing of an abuse of that discretion." *Ryan*, 157 Ill. App. 3d at 1074. Because defendant would have been prejudiced by reason of the fact that plaintiff's case in chief did not involve the issue that the first lien should be enforced or reformed, the trial court did not abuse its discretion in denying plaintiff's motion for leave to amend.

■ As a final matter, defendant argues that this court should find that plaintiff failed to join defendant within two years of the completion date; that it did not intervene properly because it sought to do so under section 2—428 of the Illinois Code of Civil Procedure (735 ILCS 5/2—408 (West 1992)) and not section 9 of the Mechanics Lien Act (770 ILCS 60/9 (West 1992)); and that the second lien claim is invalid because the verified affidavit was not based on personal knowledge. We find these grounds to be without merit. Furthermore, because we affirm the circuit court's decision based on its findings of fact and conclusions of law, it is not necessary for us to address any additional grounds to affirm any more than the circuit court needed to do so.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

DiVITO and BURKE, JJ., concur.